Dominick PAOLONI, et al., Plaintiffs,

v.

Donald I. GOLDSTEIN,
et al., Defendants.

and, NBSA, LLC, et al.,
Relief Defendants.

No. CIV.A. 01–K–275.

United States District Court,
D. Colorado.

May 21, 2001.

John Alonzo Hutchings, Dill, Dill, Carr, Stonbraker & Hutchings, Denver, CO, for plaintiffs.

James A. Jablonski, Stuart H. Pack, Gorsuch, Kirgis, LLP, Denver, CO, for Donald I. Goldstein, Jamie Goldstein, The Reliance Program, Inc., Paragon Capital Group, Inc., Reliance Financial Group, Inc.

Alan M. Loeb, Davis, Graham & Stubbs LLP, Denver, CO, for Mark Wolok, Unlimited Bonds Services Agency, LLC, International Fidelity and Surety Ltd., International Consultants and Management, Ltd.

## MEMORANDUM OPINION
## AND ORDER

KANE, Senior District Judge.

This matter is before me on the Reliance Defendants' Motion to Dismiss for Lack of Standing. This action concerns an alleged scheme by Defendants to defraud investors through the sale of viatical settlement con-

tracts.[1] Plaintiffs in this action are four individual investors in viatical settlement contract programs allegedly created and promoted by Defendants ("Plaintiff–Investors") and thirty-five financial planners and financial planning firms that sold investments in these programs to their customers (collectively "Plaintiff–Brokers").[2] Plaintiffs seek to recover the amount of these investments in Defendants' viatical settlement programs and other relief pursuant to claims under the federal RICO statute, the equivalent Florida state statute, common law tort and contract law and other theories. In the subject motion, the Reliance Defendants argue this action should be dismissed because the Plaintiff–Brokers do not have standing to assert the claims of their customers. For the reasons stated below, I deny the Reliance Defendants' motion.

## I. Standard for Decision

A motion to dismiss asserting that the plaintiff does not have standing to maintain the action is a challenge to the Court's subject matter jurisdiction brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Such a motion may be granted only when " 'it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief.' " *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir.1996)(quoting *Ash Creek Mining v. Lujan*, 969 F.2d 868, 870 (10th Cir.1992)). Although the plaintiff bears the burden of establishing the elements of standing, at this point in the litigation I accept all well-pleaded facts as true and construe all reasonable

allegations in the light most favorable to the plaintiff.[3] *Id.*

In order to determine the Plaintiffs' standing to bring this action, I must consider both "constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Constitutional standing requirements are drawn from Article III and require Plaintiffs to allege (1) a concrete and particularized actual or imminent injury (2) that is fairly traceable to Defendants' conduct (3) which a favorable court decision will redress. *Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 573 (10th Cir.2000), *cert. denied,* ——— U.S. ———, 121 S.Ct. 1078, 148 L.Ed.2d 955 (2001). As potentially relevant here, prudential standing principles generally require a plaintiff to assert his own rights, rather than those belonging to third parties. *Id.; see Warth*, 422 U.S. at 499, 95 S.Ct. 2197.

## II. Plaintiffs' Standing to Maintain This Action

Neither party incorporated either the standard of review or the legal standards for standing in their arguments on this issue. I have framed their arguments to comport with these governing principles.

### A. Constitutional Standing

In their Amended Complaint, the Plaintiff–Investors allege they were injured when they purchased viatical settlement contracts in Defendants' programs as a result of Defendants' false and misleading offering

---

**1.** Plaintiffs allege that a viatical settlement contract is the purchase of life insurance policies of terminally ill persons, typically persons with HIV or AIDS. When the person insured under the policy (known as the "viator") dies, the insurance company pays the benefits to the purchaser of the viatical settlement contract. The purchaser expects to obtain a financial benefit by purchasing the contract at a discount of face value. The discounted purchase price depends on the life expectancy of the viator, and the purchaser's rate of return depends on the viator's actual longevity. Am. Compl., ¶¶ 1–5.

**2.** The Plaintiff–Investors are Dr. Marshall Gold, Dr. David B. Sacks, David B. Sacks, MD, PC and

the Sacks Family Trust. Based on the Amended Complaint, certain of the Plaintiff–Brokers, such as Roger Larson, may also have invested in Defendants' viatical settlement contracts personally, in addition to selling these contracts to customers.

**3.** As this action proceeds, Plaintiffs will be required to support their standing to bring this action in the same manner as any other matter on which they bear the burden of proof. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Coalition for Sustainable Res., Inc. v. United States Forest Serv.*, 48 F.Supp.2d 1303, 1310 (D.Wyo. 1999).

material. This is clearly enough to establish the constitutional standing for the Plaintiff–Investors to bring this action.

In response to the Reliance Defendants' challenge to their standing in this action, the Plaintiff–Brokers allege their customers were similarly injured when they purchased Defendants' viatical settlement contracts, and that Plaintiff–Brokers have constitutional standing to assert their customers' claims against Defendants because each Plaintiff–Broker has "obtained and/or is obtaining assignment of claims from each individual purchaser" to whom they sold Defendants' viatical settlement contracts. The specific customers and claims obtained or being obtained by assignment are specified in more than twenty exhibits to the Amended Complaint.

As noted above, for purposes of deciding a motion to dismiss I must take these allegations as true and construe them in the light most favorable to the Plaintiff–Brokers. Under this standard, I find that the Plaintiff–Brokers are assignees of the claims their customers have against the Defendants. As such the Plaintiff–Brokers have standing to prosecute these claims against Defendants. *See, e.g., Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773–74, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) ("assignee of a claim has standing to assert the injury in fact suffered by the assignor"); *Feeder Line Towing Service, Inc. v. Toledo, Peoria & Western R.R. Co.*, 539 F.2d 1107, 1110 n. 7 (7th Cir.1976) (assignee has standing to assert assignor's claim).

The Reliance Defendants note that the Plaintiff–Brokers have yet to produce any assignment contracts and urge that I immediately dismiss all claims for which no assignment has been made. Given the standard of review on motions to dismiss, I decline to do so. I agree, however, that Plaintiff–Brokers only have standing to prosecute investor claims that have been validly assigned to them and that Defendants are entitled to

notice of the specific claims at issue for purposes of discovery and trial preparation. Accordingly, I will order Plaintiff–Brokers to amend their complaint to specify the claims for which they have received assignments and which are therefore at issue in this action when I set this matter for its initial Scheduling Conference.[4] This information can then be utilized by the parties to develop the stipulated Scheduling and Discovery Order to be issued following the conference. Of course, Plaintiffs will retain the right to seek leave to amend their complaint to add additional claims or parties until the deadline stated in the Scheduling and Discovery Order.

The Reliance Defendants also ask me to rule at this time that the assignment contracts between the Plaintiff–Brokers and their customers are invalid because the Plaintiff–Brokers are also potentially liable to their customers in connection with their customers' purchase of these contracts. The Reliance Defendants contend this possible liability creates a conflict of interest between the Plaintiff–Brokers and their customers that renders any assignment contract between them invalid as matter of public policy. I disagree. The Reliance Defendants fail to identify any authority supporting their position that a conflict of interest between parties to an assignment contract renders that contract void. This is perhaps because the weight of authority recognizes that public policy supports the freedom to contract, so that "a party is bound by an agreement fairly and voluntarily entered into, notwithstanding it was unwise or disadvantageous to him." *St. Francis Reg'l Med. Cnt. v. Blue Cross Blue Shield of Kansas, Inc.*, 810 F.Supp. 1209, 1218 (D.Kan.1992), *aff'd*, 49 F.3d 1460 (10th Cir.1995); *see, e.g., Fru–Con Const. Corp. v. KFX, Inc.*, 153 F.3d 1150, 1159 (10th Cir.1998). While this freedom to contract does not allow enforcement of an unconscionable contract, there is nothing in the record to date suggesting the assignment agreements are unenforceable on this basis.[5] *See*

---

4. Plaintiffs attached to their Sur–Reply to the Reliance Defendants' motion a list of the customers who have reportedly assigned their claims to the Plaintiff–Brokers to date. According to this list, more than half of the 508 customers who

purchased viatical settlement contracts from the Plaintiff–Brokers have assigned their claims against Defendants to these plaintiffs.

5. Certain claims are also not assignable as a matter of law. *See, e.g., Brown v. Gray*, 227 F.3d

*generally* Restatement (Second) of Contracts § 208, cmts. a and b (1981) (defining unconscionable contracts). Thus, even if the Plaintiff–Brokers have a conflict of interest with respect to their customers' claims against Defendants, this would not invalidate these agreements.

## B. Prudential Standing.

■ The federal courts have adopted prudential limits on standing in order " 'to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim.' " *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)(quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)). The Reliance Defendants essentially argue the Plaintiff–Brokers lack standing because they are not the "litigants best suited to assert" the claims of their customers.[6] Instead, these defendants assert, these claims should brought as a class action subject to the procedural and other requirements of Fed.R.Civ.P. 23.

'I was initially concerned about this issue. Upon further review, however, I find the Plaintiff–Brokers have prudential standing to assert their customers' claims pursuant to valid assignment contracts. First, the Reliance Defendants have failed to identify, and I have not found, any instance in which a court denied a litigant standing to pursue a third party's claim where it had been assigned the claim pursuant to a valid contract.[7] Second, the law is clear that "the plaintiff, not the judicial system, controls whether or not to ask for class action treatment." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 760 (3rd Cir.1974); *see Nance v. Union Carbide Corp.,* 540 F.2d 718, 721–22 (4th Cir.1976), *vacated on other grounds,* 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977); *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civil 2d § 1785 at 92 (1986) (although a trial "court may suggest that relief to a definable class would be appropriate, ... it cannot convert an individual action into a class action on its own motion."). As the current complaint in this action seeks relief only for specified individuals, either directly or by assignment of their claims, it does not seek class relief and hence is not subject to the requirements of Fed.R.Civ.P. 23.

The Reliance Defendants place great weight on the concurring opinion in *Telecommunications Research & Action Ctr. (TRAC) v. Allnet Communication Services, Inc.,* 806 F.2d 1093 (D.C.Cir.1986), in arguing their position. In *TRAC,* the D.C. Circuit considered whether the plaintiff association had standing to bring a suit for damages on behalf of its members. The court held it did not because it could not satisfy the well-established three-part test for such associational standing. *See id.* at 1094–96. In so ruling, the court declined to establish a *per se* rule that associations never have standing to represent their members when monetary relief is at stake. *Id.* at 1096. In a concurring opinion, Judge Bork discussed reasons the court might want to adopt such a rule in the future and why a class action by association members would be preferable to finding that the association had standing to represent its members in such a case. *Id.* at 1098. This discussion is of little relevance in this case,

1278, 1294 (10th Cir.2000) (Colorado law does not permit assignment of claims involving matters of personal trust and confidence or for personal services); *Carter v. Romines,* 560 F.2d 395, 396 n. 1 (8th Cir.1977) (federal civil rights damage claims not assignable). Plaintiffs cite authority indicating that the federal and state law claims in this action are all capable of assignment. *See Brown,* 227 F.3d at 1294 (Colorado law favors assignment of rights of action except as noted above); *In re National Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litigation,* 636 F.Supp. 1138, 1151, 1152–56 (C.D.Cal.1986) (RICO treble damage claim assignable). The Reliance Defendants have not disputed this authority or the conclusion that the claims in this action are assignable if the assignment contract is otherwise valid.

**6.** As this concern does not apply to the Plaintiff–Investors, they have prudential standing to bring this action.

**7.** As noted above, I must accept the Plaintiff–Brokers' allegations of a valid assignment in deciding the Reliance Defendants' motion to dismiss. This issue may be revisited as this litigation proceeds. *See* n. 3 *supra.*

particularly since Judge Bork recognized that the association could avoid associational standing concerns if members assigned the association their rights. *Id.*

The Reliance Defendants make a number of other arguments relating to the potential difficulty of proceeding with this case on an individual rather than a class basis. While I do not agree this action as it is currently situated presents all of the evils the Reliance Defendants predict, it is possible class action treatment would be a simpler, more predictable method for deciding the individual investors' claims against the Defendants. As is their right, those investors who have validly assigned their claims to the Plaintiff–Brokers have chosen a different route. Under these circumstances, the Plaintiff–Brokers have standing to bring these individual claims in this litigation.

For the reasons stated above, the Reliance Defendants' Motion to Dismiss for Lack of Standing, filed April 12, 2001 as part of Docket No. 35, is **DENIED**.