State of CONNECTICUT,
Plaintiff–Appellant,

v.

PHYSICIANS HEALTH SERVICES
OF CONNECTICUT, INC.,
Defendant–Appellee.

Docket No. 00–7986.

United States Court of Appeals,
Second Circuit.

Argued: May 1, 2001.

Decided: March 27, 2002.

Richard Blumenthal, Connecticut Attorney General; (Charles C. Hulin, Assistant Connecticut Attorney General, of counsel), Hartford, CT, for Plaintiff–Appellant.

Daly D.E. Temchine, Epstein, Becker, & Green, Washington, DC.; (Stephanie W. Kanwit, Epstein, Becker & Green, Washington, DC. and Davis S. Poppick, Epstein,

Becker & Green, Stamford, CT, of counsel), for Defendant–Appellee.

William F. Hanrahan, Jon W. Breyfogle, Jennifer E. Eller, Groom Law Group, Washington, DC; Louis Saccoccio, American Association of Health Plans, Washington, DC, for Amicus Curiae American Association of Health Plans.

Before: KEARSE and SACK, Circuit Judges, and RAKOFF, District Judge.[*]

SACK, Circuit Judge.

On December 14, 1999, the State of Connecticut brought this suit for equitable relief in the United States District Court for the District of Connecticut against Physicians Health Services of Connecticut, Inc. ("PHS"), an insurance company offering managed care plans to Connecticut residents. The State seeks an order pursuant to Section 502(a)(3) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3),[1] enjoining the defendant PHS from using a drug "formulary"—a list of drugs preapproved by PHS for reimbursement—that allegedly prevents plan enrollees from receiving drugs prescribed for them by their physicians that are medically necessary or preferable to a comparable listed drug. Under § 1132(a)(3), "a participant, beneficiary, or fiduciary" may bring a civil action for equitable relief to redress violations of ERISA or the terms of an ERISA-regulated plan. The State asserts standing to sue in its capacity as *parens patriae*, and as the assignee of eight individual participants in PHS plans who have purportedly assigned to the State their right to seek "appropriate equitable relief" with respect to "any cause of action" they may have as plan participants or beneficiaries. Compl., Exs. 1–8 ¶ 2. The district court (Stefan R. Underhill, *Judge*) granted the defendant's motion to dismiss the State's complaint for lack of standing. *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 103 F.Supp.2d 495 (D.Conn.2000) ("*PHS*"). The court, in a thorough and careful opinion, held that the State did not meet the requirements for standing under § 1132(a)(3). *Id.* at 511. The State filed a timely appeal.

We conclude that the State as assignee of the plan participants' rights to bring equitable actions against the defendant lacks standing under Article III of the Constitution. We further hold that the State cannot bring this suit in a *parens patriae* capacity. Because Congress "carefully drafted" § 1132, parties other than those explicitly named therein—plan participants, beneficiaries, and fiduciaries—may not bring suit. *Pressroom Unions–Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir.), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983). The State in its *parens patriae* capacity is not one of these enumerated parties. We therefore affirm the district court's grant of the defendant's motion to dismiss all the State's claims for lack of standing.

## BACKGROUND

In its complaint filed on December 14, 1999, the State alleges that PHS's drug formulary system violates provisions of ERISA that impose on PHS: (1) a fiduciary duty to administer its health care plans solely in the interests of the plan participants; (2) a duty to disclose the full details of its plans to plan participants; and (3) a

---

[*] The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

1. ERISA is codified at 29 U.S.C. §§ 1001–1461. We refer to the provisions of ERISA as codified: § 502 of ERISA, for example, is referred to as 29 U.S.C. § 1132.

duty to provide plan participants with adequate notice of reasons for denials of claims for reimbursement. Compl. ¶¶ 83–90. The State asserts that PHS's drug formulary system injures plan participants by denying them "access to safe, effective, and medically necessary" drugs prescribed by their doctors. *Id.* ¶ 83. The details of the State's allegations are set forth in the district court's opinion. *See PHS,* 103 F.Supp.2d at 497–500. Because we do not reach the merits of the claims, we need describe them no further here.

Relying on 29 U.S.C. § 1132(a)(3),[2] which allows "a participant, beneficiary, or fiduciary" of an ERISA-regulated plan to bring a civil action for injunctive and other equitable relief, the State seeks an order:

1. requiring the defendant to provide its enrollees with the prescription medications ordered by the attending physician unless the defendant submits to the Court, and the Court approves, a plan *for substituting the defendant's preferred medications for those prescribed* while insuring [sic] that (i) the substitution is approved by the attending physician, and (ii) the enrollee experiences no unreasonable delay before receiving an appropriate medication; and

2. requiring the defendant to comply with the dictates of ERISA and disclose to enrollees information sufficient to inform them fully and accurately, prior to their enrollment or re-enrollment in the plan, concerning the true nature of the

prescription drug benefit to which they are entitled; and

3. requiring that whenever an enrollee requests coverage of a prescription drug by presenting a completed prescription form to a participating pharmacy and coverage is denied, the defendant shall give the enrollee a written denial notice setting forth the specific reason for the denial, and the steps necessary to file an appeal[.]

Compl. ¶ 91. The complaint also requests "[s]uch other and further relief as the Court may deem necessary and proper." *Id.*[3]

The State advances two theories of standing. First, it asserts standing as the assignee of the rights of eight plan participants as individuals and as representatives of a class consisting of all Connecticut residents enrolled in PHS's managed care plans. Second, it asserts standing in its *parens patriae* capacity to protect its interest in the health and well-being of its citizens. Each of these plan participants executed a document purporting to assign to the State his or her right to sue for injunctive or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3). The right to sue for money damages was not assigned and remains with the plan participants. Attached to the complaint are copies of these assignments. Each states:

I hereby assign to the State of Connecticut any cause of action I may have aris-

---

**2.** Section 1132 provides in pertinent part:
  **(a) Persons empowered to bring a civil action**
    A civil action may be brought . . .
    (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

29 U.S.C. § 1132(a)(3).

**3.** In addition, the State seeks an order certifying this action as a class action on behalf of all Connecticut residents enrolled in PHS's managed care plans established under ERISA. Because the district court dismissed this action in its entirety, the State's March 30, 2000 motion for class certification was never ruled upon and is not at issue here.

ing from my status as a participant in or beneficiary of an employee welfare benefit plan established pursuant to the Federal Employee Retirement Income Security Act of 1974 ("ERISA"), upon the following conditions:

1. I believe my managed care organization has improperly and illegally obstructed my access to safe and effective prescription medications. I believe many other Connecticut residents have been injured in a similar way. I cannot afford to hire private attorneys to protect my rights under ERISA.

2. By this assignment I intend to empower the State of Connecticut, by and through the Attorney General, to take action to protect me, and people like me, pursuant to 29 U.S.C. § 1132(a)(3), which provides that I, or my assignee, may bring an action to enjoin any act or practice which violates the terms of my health care plan, or to obtain other appropriate equitable relief to redress such violations or to enforce provisions of ERISA or the plan. I agree to cooperate with the Attorney General's Office in any such action, and I agree that the facts of my case should be made public. I am willing, if necessary, to testify under oath.

3. Any positive result the Attorney General is able to obtain will help me, and other people in my position, to receive the medically necessary prescription medications to which we are entitled and which are essential to our health and well-being.

Compl., Exs. 1–8. In exchange for this assignment, the State neither promised to prosecute the assignors' claims nor provided other consideration.

On January 24, 2000, PHS filed a motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) the State lacked standing to bring this action; (2) the assignor-plan participants had not suffered any injuries compensable under ERISA; and (3) the State failed to state a cause of action under ERISA. On July 13, 2000, the district court granted the defendant's motion to dismiss, holding that the State lacked standing to pursue its claims either as *parens patriae* or as the assignee of the named participants—either individually or as representatives of a class. *PHS*, 103 F.Supp.2d at 497. The district court concluded that "Congress carefully limited the persons authorized to" sue under § 1132(a)(3) to "either 'a participant, beneficiary, or fiduciary'" and that "[t]he State does not meet any of these statutory requirements of standing, and cannot overcome its omission from section [1132(a)(3)] either through the doctrine of *parens patriae* or through the assignment of rights from persons who would have standing." *Id.* The district court did not address PHS's other asserted grounds for dismissal.

This appeal followed. The sole issue before us is whether the State has standing in either of the two capacities it asserted in the district court.

## DISCUSSION

I. Standard of Review

Because "standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir.1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). This appeal depends solely on questions of law, which we review *de novo*. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (holding that legal issues presented by a Rule 12(b)(1) motion

to dismiss for want of jurisdiction are reviewed *de novo*).

## II. The State's Standing as Assignee

We reach the same conclusion as that of the district court, that the State lacks standing to pursue this action as an assignee of the eight plan participants' right to bring an action in equity, although our reasoning differs from the district court's. The court concluded that the State lacks standing as an assignee because "the civil enforcement provisions of ERISA are exclusive and provide standing only to ... specifically enumerated" parties, who include plan participants and beneficiaries but not their assignees. *PHS*, 103 F.Supp.2d at 510. We do not reach this issue.[4] Rather, we conclude that the State, in its capacity as an assignee of the right to bring suit for equitable relief, did not suffer an injury of a nature that would confer standing upon it under Article III of the Constitution. This issue is distinct from whether PHS's practices injure the State itself independent of the assignments, a question to which we advert in our discussion of *parens patriae* standing in Part III of this opinion, below.[5]

The assignments purport to transfer to the State any right of action for equitable relief possessed by the plan participants by virtue of their status as plan participants or beneficiaries. They do not, the State acknowledges, confer "actual" rights or benefits under ERISA on the State. Pl.'s Br. at 15–17. The right to recover benefits or to seek money damages remains with the assignors.[6] Moreover, the

---

**4.** We have previously held that assignees have standing to sue under 29 U.S.C. § 1132(a) in some circumstances. For example, we have held that healthcare providers to whom a beneficiary has assigned his or her claim in exchange for healthcare have standing to sue under ERISA to recover for medical expenses incurred. *I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Trust Fund*, 136 F.3d 114, 117 n. 2 (2d Cir.1998). After oral argument in this case, we decided in *Simon v. General Electric Co.*, 263 F.3d 176 (2d Cir.2001) (per curiam), that a creditor of a health care provider does not have standing under 29 U.S.C. § 1132(a)(1)(B). *Id.* at 177–78. In that decision, we stated that ERISA confers standing on assignees only if they are "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care benefits." *Id.* at 178. *Simon* does not necessarily control this case, however, because the general rule it announced is *dicta* directed at § 1132(a)(1)(B). We have never decided whether a state may obtain standing as an assignee of a plan participant under § 1132 generally or whether different rules of standing apply under § 1132(a)(3) than under § 1132(a)(1)(B). *See Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 148 (2d Cir.1999) ("Section [1132(a)(3)] 'act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations [of ERISA] that [§ 1132] does not elsewhere adequately reme-

dy.' ") (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)) (first two brackets in original). Because we conclude that the State in this case lacks Article III standing, we do not reach the question of whether, as a matter of statutory construction, a State could ever obtain standing as an assignee under § 1132(a)(3).

**5.** We need not and therefore do not address the other issues raised by the defendant or *amicus curiae*, including: (1) whether ERISA bars assignments to state governments; (2) whether breach of fiduciary duty claims are personal and cannot be assigned; (3) whether a party can assign a cause of action without also assigning the underlying rights and benefits; and (4) whether the non-assignment clauses in the PHS plans bar these assignments.

**6.** The assignments each begin by assigning to the State "any cause of action" arising under ERISA. *See* Compl., Exs. 1–8. The assignment is then qualified as being "upon the following conditions." *Id.* The second paragraph thereafter reads, in pertinent part, "By this assignment I intend to empower the State of Connecticut, by and through the Attorney General, to take action to protect me, and people like me, pursuant to 29 U.S.C. 1132(a)(3), which provides that I, or my as-

assignments divorce the equitable cause of action aimed at an alleged breach of fiduciary duty from the duty itself because they do not create a fiduciary duty running from PHS to the State. And the assignments do not shift the loss suffered by individual enrollees from the alleged breach of such duty from the individuals to the State.

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue." *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

> Article III, § 2 of the United States Constitution restricts federal courts to deciding "Cases" and "Controversies." From this has emerged the doctrine of constitutional standing. Federal courts must determine [standing] at the threshold of every case.... "It would violate principles of separation of powers for us to hear a matter that was not a case or controversy and therefore not delegated to the [federal] judiciary under Article III."

*Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 381–82 (2d Cir.2000) (quoting *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir.1999); other citations omitted; second brackets in original).

■ At an "irreducible constitutional minimum," Article III standing requires that the plaintiff "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotation marks omitted); *accord Vt. Agency of Natural Res. v. United States ex. rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); *St. Pierre v. Dyer*, 208 F.3d 394, 401 (2d Cir.2000); *Vazquez*, 145 F.3d at 80; *cf. Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.") (citation and internal quotation marks omitted).[7] The Supreme Court has

---

signee, may bring an action to enjoin any act or practice which violates the terms of my health care plan, or to obtain other appropriate equitable relief to redress such violations or to enforce provisions of ERISA or the plan." *Id.* ¶ 2. The State agrees that the intent of the parties was for the plan participants to assign only their right to such equitable relief and thus retain the right to seek payment of their benefits. *See* Pl.'s Br. at 15 ("Most important, the assignments exclude any claims for benefits. Instead, the assignments are limited to 'any *cause of action* for equitable relief ....' ") (emphasis in original; purporting to quote assignments); *cf.* Audiotape of Oral Argument, May 1, 2001 (To panel member's question, "But they are retaining the right to sue for those benefits. They are only giving you the right to pursue injunctive relief, right?" the State's Attorney General responded, "They assigned the right to pursue injunctive relief. That is the only relief they sought." Answering a related question, he said, "The State of Connecticut has nothing but the right to sue and seek the relief that would protect these individuals from the abuses that we claim violate federal law.").

7. Article III standing also requires that there be "a causal connection between the injury and the conduct complained of" and that it is "likely ... that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130; *accord Vt. Agency*, 529 U.S. at 771, 120 S.Ct. 1858 (2000) (internal quotation marks omitted); *Dyer*, 208 F.3d at 401; *Vazquez*, 145 F.3d at 80. We do not address these additional requirements here because the State fails to meet the "injury in fact" requirement.

noted, as a "prudential principle[ ][,] . . . that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll.*, 454 U.S. at 474, 102 S.Ct. 752 (citation and internal quotation marks omitted).

The State does not bring suit here as a party injured itself, but as an assignee of others who assert injury. The Supreme Court has held that in at least some cases, an "assignee of a claim [does have] standing to assert the injury in fact suffered by the assignor." *Vt. Agency*, 529 U.S. at 773, 120 S.Ct. 1858. Typically, the assignee, obtaining the assignment in exchange for some consideration running from it to the assignor, replaces the assignor with respect to the claim or the portion of the claim assigned, and thus stands in the assignor's stead with respect to both injury and remedy. For example, we have held that a healthcare provider that spends money on behalf of a patient for drugs and in return receives an assignment of the patient's rights to reimbursement under a healthcare plan has standing as assignee in a lawsuit under ERISA against the plan that refused the reimbursement. *See I.V. Servs. of Am. v. Trs. of Am. Consulting Eng'rs Council Ins. Trust Fund*, 136 F.3d 114, 117 n. 2 (2d Cir.1998). In *I.V. Services*, the injury—the unreimbursed cost of drugs prescribed for the assignor—was assumed by the assignee, and in return the right to seek redress for it passed from the

patient to the provider under the assignment. We noted our agreement "with our sister circuits that, under federal common law, the assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA." *Id.* (citations omitted). By sustaining the plaintiff's standing as a matter of federal common law, we implicitly held that healthcare providers under these circumstances have constitutional standing.

There are also situations where, even though an assignee incurs no injury, expense, or loss in exchange for the assignment, a valid and binding assignment of a *claim* (or a portion thereof)—not only the right or ability to bring suit—may confer standing on the assignee.[8] In *Vermont Agency*, the Supreme Court held that the plaintiff had standing under Article III to bring a *qui tam*[9] civil action pursuant to the False Claims Act, which allows a private person (the relator) to bring suit on behalf of the United States government and in return recover a share of the proceeds from the action. 529 U.S. at 769, 771–78, 120 S.Ct. 1858. The Court concluded that "the United States' injury in fact suffices to confer standing on [the relator]." *Id.* at 774, 120 S.Ct. 1858. The Court explained that an "adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor. The [False Claims Act] can reasonably be regarded as

**8.** Although the Supreme Court held that an "assignee of a claim has standing," *Vt. Agency*, 529 U.S. at 773, 120 S.Ct. 1858, it did not define further "claim." We note, however, that "claim" cannot simply refer to a right to bring suit. In *Lujan*, the Supreme Court struck down the "citizen-suit" provision of the Endangered Species Act of 1973. 504 U.S. at 571–78, 112 S.Ct. 2130. In doing so, the Court expressly held that Congress cannot grant standing to a party if the party has no

concrete interest in the suit and only has a "public interest in proper administration of the laws." *Id.* at 576, 112 S.Ct. 2130.

**9.** The Court explained: *"Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.' " *Vt. Agency*, 529 U.S. at 768 n. 1, 120 S.Ct. 1858.

effecting a partial assignment of the Government's damages claim." *Id.* at 773, 120 S.Ct. 1858 (footnote omitted).[10]

The case before us differs critically from *Vermont Agency* and *I.V. Services.* The *qui tam* relator in the former and the healthcare provider in the latter each had a " 'concrete private interest in the outcome of [its] suit.' " *See Vt. Agency,* 529 U.S. at 772, 120 S.Ct. 1858 (quoting *Lujan,* 504 U.S. at 573, 112 S.Ct. 2130). That is, the outcome had the potential to affect the *qui tam* relator and healthcare provider in a "personal and individual way": They both stood, personally and individually, to recover a monetary award. *See Lujan,* 504 U.S. at 560 & n. 1, 112 S.Ct. 2130 (noting that an "injury in fact" must be "particularized" and defining "particularized" as affecting "the plaintiff in a personal and individual way") (citations and internal quotation marks omitted). Furthermore, their interest in the suit was directly related to the assignors' original injuries. *See Vt. Agency,* 529 U.S. at 772, 120 S.Ct. 1858 ("An interest unrelated to injury in fact is insufficient to give a plaintiff standing.") (citations omitted). The money damages they sought to recover would be awarded in recompense for the property interest allegedly injured by the defendants.

■ As assignee in the present case, however, the State fails to meet the injury requirement because it does not have a "concrete private interest in the outcome of the suit." *See id.* (citation and internal quotation marks omitted). In other words, it has failed to allege that it suffered an "injury in fact" that is "particularized." *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (citation, internal quotation marks, and footnote omitted). The actions of the defendant, as alleged, do not "affect the plaintiff in a personal and individual way."[11] *Id.* at 560 n. 1, 112 S.Ct. 2130 (thus defining "particularized"). Through the assignments, the State has acquired only the right to control the equitable portion of a lawsuit seeking redress of the assignor-participants' rights under ERISA. None of the remedies being sought would flow to the State as assignee.[12] As the State puts it, "[t]his case is brought *solely for the benefit of the assignors* and those similarly situated." Pl.'s Br. at 11 (emphasis added). Even if the assignments are valid as a contractual matter, they thus merely give the State the right to act as a nominal party. *Cf. New*

---

10. The *Vermont Agency* Court's analysis also depended heavily on the "long tradition of *qui tam* actions in England and the American Colonies," *id.* at 774, 120 S.Ct. 1858, which it described in some detail. The Court noted that "Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.' " *Id.* at 774, 120 S.Ct. 1858 (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

11. The State as an assignee has no interests other than those assigned to it by the assignors. Put another way, the State, as assignee, has the same interests as any private citizen to which such rights had been assigned.

Thus, when suing in its capacity as assignee, the State cannot rely on its *parens patriae* interest in the health and well-being of its citizens.

12. In its complaint, the State repeatedly states that the enrollees were injured and that the enrollees would benefit from the lawsuit. *See* Compl. ¶ 3 (stating that the *enrollees* have suffered "real and immediate injury" that includes "unnecessary pain and suffering, delayed recovery, and out-of-pocket expenditure"); *id.* ¶ 5 (stating that the *enrollees* were injured); *id.* ¶ 91 (requesting that PHS "provide *its enrollees* with the prescription medications," "disclose *to enrollees*" sufficient information, and "give the *enrollee* a written denial notice") (emphases added).

*York ex rel Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 38 (2d Cir.1982) (holding that a quasi-sovereign interest that will support *parens patriae* standing must be distinguished "from [*inter alia*] . . . private parties' interests where the State serves merely as a nominal party"), *vacated in part on other grounds*, 718 F.2d 22 (2d Cir.1983) (in banc). The State as an assignee therefore lacks standing under Article III of the Constitution.

"We have no doubt about the sincerity of [the State's] stated objectives and the depth of [its] commitment to them. But the essence of standing is not a question of motivation but of possession of the requisite . . . interest that is, or is threatened to be, injured by the unconstitutional conduct." *Valley Forge Christian Coll.*, 454 U.S. at 486 n. 21, 102 S.Ct. 752 (citations and internal quotation marks omitted; ellipses in original). We hold that the State as purported assignee of the right to seek equitable relief for the assignors' alleged injury lacks Article III standing because it does not, through that assignment, possess the requisite interest that is or is threatened to be injured by PHS's conduct.[13]

### III. The State's Standing as *Parens Patriae*

#### A. *Article III Standing*

■ As an alternative basis for jurisdiction, the State asserts the right to institute this action in its capacity as *parens patriae*. The doctrine of *parens patriae* allows states to bring suit on behalf of their citizens in certain circumstances by asserting a "quasi-sovereign interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). The doctrine of *parens patriae* derives from the common-law principle that a sovereign, as "parent of the country," may step in on behalf of its citizens to prevent "injury to those who cannot protect themselves." *Id.* at 600, 102 S.Ct. 3260 (citation and internal quotation marks omitted).

The district court, in concluding that the State had no Article III standing to bring this litigation, reviewed various factors that the Supreme Court, this Court, and others have viewed as prerequisites for *parens patriae* standing. *PHS*, 103 F.Supp.2d at 504–09. The court concluded that the State had "articulated an interest apart from the interests of the particular private parties referenced in the complaint," *id.* at 506 (citation omitted), and that it had met the requirement that the injury asserted be to "a sufficiently substantial segment of its population," *id.* at 504. The court held, however, that ERISA's broad preemption clause removed from the State its "quasi-sovereign interest in the specific relief sought by this lawsuit," *id.* at 507, and, in "a very close call," *id.*, that there were "adequate alter-

**13.** We do not base our holding on the State's status as a state. *Cf. Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 344, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (holding that "the Commission's status as a state agency, rather than a traditional voluntary membership association," does not "preclude[] it from asserting the claims of the Washington apple growers and dealers who form its constituency"). A private individual who received these assignments would also lack Article III standing. While there may be differences between the abilities of private parties and of states to assert standing under the statutory provisions of ERISA, such differences are irrelevant to the Article III inquiry.

Nor do we base our holding on the fact that the State is seeking equitable relief, not money damages. In some circumstances, an assignee seeking solely injunctive relief has standing. We have no reason to doubt, for example, that a person assigned a claim with respect to tangible property would have standing to seek an injunction with respect to the care or custody of that property.

native means of civil enforcement by which individual plaintiffs may obtain complete relief," *id.* at 509. Based on its last two holdings, the district court concluded that the State lacked *parens patriae* standing under Article III.

We might be inclined to disagree with the district court were it necessary to address the issue of Article III *parens patriae* standing.[14] We do not think, however, that it is.

### B. Statutory Standing

Whether or not the State has *parens patriae* standing under Article III, we conclude that it lacks statutory standing under ERISA's § 1132(a)(3). When determining whether a state has *parens patriae* standing under a federal statute, we ask if Congress intended to allow for such standing. *See Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 260–66, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972) (parsing statutory language and examining legisla-

tive history before deciding that states cannot bring *parens patriae* actions for damages under § 4 of the Clayton Act because Congress did not intend to allow such suits); *Illinois v. Life of Mid–Am. Ins. Co.*, 805 F.2d 763, 766 (7th Cir.1986) (concluding that *parens patriae* standing was absent because "even if the complaint did sufficiently allege an injury to the state in its quasi-sovereign capacity, it [was] not clear to [the court] that Congress, in enacting the RICO statute, intended to permit such a *parens patriae* proceeding"); *see also New York ex rel Vacco v. Reebok Int'l Ltd.*, 96 F.3d 44, 46 (2d Cir.1996) (noting that the Hart–Scott–Rodino Antitrust Improvement Act of 1976 explicitly provides for *parens patriae* standing).

Section 1132(a)(3) allows "a participant, beneficiary, or fiduciary" of an ERISA-regulated plan to bring a civil action for injunctive and equitable relief. Other subparts of § 1132 allow the Secretary of Labor to bring specified actions. *Id.* §§ 1132(a)(2), (4), (5), (8), (9). Section

---

14. First, it is not clear to us that the State seeks to impose state law on a field preempted by ERISA, rather than to enforce ERISA itself. The Supreme Court stated in *Alfred L. Snapp & Son, Inc.* that a characteristic of a valid *parens patriae* suit is that the asserted injury "is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." 458 U.S. at 607, 102 S.Ct. 3260 (footnote omitted). Such is the injury asserted by the State here. The State might well choose to enact legislation to govern this area but cannot because of the broad preemptive scope of ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (noting that ERISA preempts all state law regulating employee benefit plans).

Second, the State raises concerns that may be legitimate regarding the likelihood that individual enrollees could or would pursue litigation on the scale necessary to obtain the full relief to which the State thinks its citizens are entitled. *See, e.g., Maryland v. Louisiana*, 451 U.S. 725, 739, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) (finding *parens patriae* standing

appropriate, in part, because "individual consumers cannot be expected to litigate the validity of the First–Use Tax given that the amounts paid by each consumer are likely to be relatively small"); *Puerto Rico ex rel. Quiros v. Bramkamp*, 654 F.2d 212, 217 (2d Cir. 1981) (finding that individuals could not obtain complete relief because "[t]here is no assurance that the individual workers could bear the cost of the lawsuit" and "the interests of the individual laborers ... are not necessarily coextensive with those of the public"), *cert. denied*, 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982); 1 Laurence H. Tribe, *American Constitutional Law* § 3–20, at 454 (3d ed. 2000) (stating that states may bring *parens patriae* suits "to challenge allegedly illegal business activities on behalf of citizen consumers as a statewide 'class' of sorts—a group whose members may lack a sufficient economic stake to justify bringing suit as individuals or who may have insufficient incentive, or may otherwise be unable to meet the criteria, to sue as a Rule 23 class") (citing *Maryland v. Louisiana*, 451 U.S. at 737–39, 101 S.Ct. 2114).

1132(a)(7) authorizes states "to enforce compliance with a qualified medical child support order," and § 1169(b) of the same title authorizes states to acquire the rights of third parties through assignment for the limited purpose of recouping payments made under state plans for medical assistance. Nowhere else in § 1132 are states authorized to bring suit.

■ Courts have consistently read § 1132(a)(3) as strictly limiting "the universe of plaintiffs who may bring certain civil actions." *Harris Trust and Savs. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (emphasis deleted). Absent a valid assignment of a claim, at least, non-enumerated parties lack statutory standing to bring suit under § 1132(a)(3) even if they have a direct stake in the outcome of the litigation. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under [§ 1132]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action...."); *Pressroom Unions–Printers*, 700 F.2d at 892 (concluding that § 1132(e)(1), which states that pension plan participants, beneficiaries, and fiduciaries may sue for certain violations of ERISA, "should be viewed as an exclusive jurisdictional grant" of standing to the parties specified); *see also Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 712, 151 L.Ed.2d 635 (2002) ("ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.") (emphasis, citations, and internal quotation marks omitted).

Because states are not mentioned in § 1132(a)(3), Congress—which "carefully drafted [the] provisions" of § 1132—did not intend for them to have the ability to bring suit pursuant to § 1132(a)(3). *See Pressroom Unions–Printers*, 700 F.2d at 893. Furthermore, as the district court explained, "[t]he inference that Congress intentionally omitted states from section [1132(a)(3)] finds strong support in the fact that states are expressly empowered by section [1132(a)(7)] to bring only a very limited class of cases" to enforce qualified medical child-support orders. *PHS*, 103 F.Supp.2d at 502; *see also* 29 U.S.C. § 1169(b) (allowing states to use assignments in certain circumstances not present in this case).

By holding that the State lacks *parens patriae* standing because § 1132(a)(3) does not expressly provide for such standing, we do not of course intend to imply that states may only sue in their *parens patriae* capacity when a statute specifically provides for suits by states. "[S]tates have frequently been allowed to sue in *parens patriae* to ... enforce federal statutes that ... do not specifically provide standing for state attorney generals." *New York ex rel Vacco v. Mid Hudson Med. Group, P.C.*, 877 F.Supp. 143, 146 (S.D.N.Y.1995) (collecting cases). *But cf. Standard Oil Co.*, 405 U.S. at 264, 92 S.Ct. 885 (rejecting *parens patriae* standing in a suit for damages in the absence of a "clear expression of congressional purpose" allowing such standing because of the concern of double recovery). As the district court correctly pointed out, however, "the federal statutes under which states have been granted *parens patriae* standing all contain broad civil enforcement provisions" that "permit suit by any 'person' that is 'injured' or aggrieved.'" *PHS*, 103 F.Supp.2d at 509–10 (collecting federal statutes with broad enforcement provisions). Section 1132 of ERISA, by contrast, carefully limits the parties who may seek relief.

By our holding, we reject the State's argument that Congress cannot limit states' power to sue as *parens patriae*. Specifically, the State argues that "[t]he ability of states to act in the interest of their citizens in a *parens patriae* capacity is an essential attribute of the inherent sovereignty of states that may not be diminished in light of the principles of our federalism that are reflected in the Constitution and the Tenth Amendment." Pl.'s Ltr. Br. of June 12, 2001, at 14.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Federal statutes validly enacted under one of Congress's enumerated powers—here, the Commerce Clause—cannot violate the Tenth Amendment unless they commandeer the states' executive officials, *see Printz v. United States,* 521 U.S. 898, 933, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), or legislative processes, *see New York v. United States,* 505 U.S. 144, 161–66, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992); *see also Cellular Phone Taskforce v. Fed. Communications Comm'n,* 205 F.3d 82, 96 (2d Cir.2000) (holding that a federal telecommunications law preempting states' ability to regulate the health and safety issues with respect to certain personal wireless service facilities does not violate the Tenth Amendment because the "statute does not commandeer local authorities to administer a federal program"), *cert. denied,* 531 U.S. 1070, 121 S.Ct. 758, 148 L.Ed.2d 661 (2001); *City of New York v. United States,* 179 F.3d 29, 35 (2d Cir. 1999) (holding that the Tenth Amendment is a "shield against the federal government's using state and local governments to enact and administer federal programs" not a "sword allowing states and localities to engage in passive resistence that frus-trates federal programs"), *cert. denied,* 528 U.S. 1115, 120 S.Ct. 932, 145 L.Ed.2d 811 (2000); *United States v. Sage,* 92 F.3d 101, 107 (2d Cir.1996) (concluding that the Child Support Recovery Act does not violate the Tenth Amendment because it does not "compel[ ] a State to enact and enforce a federal family program"), *cert. denied,* 519 U.S. 1099, 117 S.Ct. 784, 136 L.Ed.2d 727 (1997); *United States v. Bostic,* 168 F.3d 718, 724 (4th Cir.) (holding that a federal gun statute does not violate the Tenth Amendment because it was validly passed under the Commerce Clause and imposes no "affirmative obligation" on the states), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999). Section 1132 does not commandeer any branch of state government because it imposes no affirmative duty of any kind on any of them. It therefore does not violate the Tenth Amendment.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.