**NATIONAL LABOR RELATIONS BOARD, Petitioner–Appellant,**

v.

**SUFFIELD ACADEMY, Respondent–Appellee.**

No. 02–4049.

United States Court of Appeals, Second Circuit.

Argued: Jan. 16, 2003.

Decided: Feb. 28, 2003.

Fred L. Cornell, Jr., Esq., Aileen A. Armstrong, Esq., Siobhan M. Kelly, Esq., National Labor Relations Board, Washington, DC.

Peter B. Hoffman, Esq., National Labor Relations Board, Hartford, CT, for Petitioner–Appellant.

Linda L. Morgan, Esq., Emanuel N. Psarakis, Esq., Robinson & Cole, Hartford, CT, for Respondent–Appellee.

Before: VAN GRAAFEILAND, KEARSE and B.D. PARKER, Jr., Circuit Judges.

VAN GRAAFEILAND, Senior Circuit Judge.

Petitioner National Labor Relations Board seeks enforcement of its Decision and Order holding that Respondent Suffield Academy violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. For the reasons set forth below, the Board's Decision and Order is enforced.

*Background*

The Academy is a private secondary school located in Suffield, Connecticut. From May 1996 through August 1997, the Academy negotiated with Teamsters, Local Union 559, AFL–CIO concerning a proposed collective-bargaining agreement covering the Academy's full-time and regular part-time service and maintenance employees. One of the ground rules of the negotiations was that all subject matter agreements were tentative pending overall agreement on the full collective-bargaining agreement.

One of the central issues of negotiation was healthcare coverage. In May 1996, the Union proposed that the Academy provide coverage for unit employees under the Teamsters' A–Plus health insurance plan. In January 1997, the Academy tentatively accepted the Union proposal. The tentative agreement remained in place until July 23, 1997.

On that date, the Academy and the Union began their meeting by reaffirming the tentative agreements that had been reached up to that point. The Academy specifically reaffirmed its tentative agreement to provide A–Plus health coverage. Later, at the request of the Academy representatives, the meeting was briefly adjourned. When the meeting resumed, the Academy informed the Union that it had decided not to offer A–Plus coverage after all. The Academy offered no rationale for its sudden change in position during the rest of the meeting. A week later, the Academy explained that the A–Plus coverage offer was withdrawn because the Academy preferred instead to funnel the costs of such coverage into wage increases for unit employees. On about September 1, 1997, the Academy subcontracted certain cleaning duties out to non-union em-

ployees, despite protests from the Union that such actions ran afoul of subcontracting restrictions to which the parties tentatively had agreed. The Union subsequently filed a complaint with the NLRB against the Academy alleging unfair labor practices.

After conducting a trial, Administrative Law Judge Wallace Nations issued an opinion concluding, as a matter of law, that the Academy failed to bargain in good faith by withdrawing from its tentative agreement to provide A–Plus health coverage and by unilaterally subcontracting bargaining unit work absent a lawful impasse in negotiations in violation of §§ 8(a)(1) and (5) of the Act. In affirming this decision, the majority of the Board relied upon *Driftwood Convalescent Hosp.*, 312 NLRB 247, 252 (1993), enforced sub nom. *NLRB v. Valley W. Health Care*, 67 F.3d 307 (9th Cir.1995). The Academy now argues that *Driftwood*, in effect, creates an impermissible *per se* rule that shifts the Board's inquiry from determining whether a party negotiated in bad faith to deciding whether a party had "good cause" for withdrawing from a tentative agreement. In the alternative, the Academy contends that the Board erred in finding it bargained in bad faith and that the Board's remedial order cannot stand.

*Discussion*

■ Whether *Driftwood* establishes a *per se* rule, as the Academy maintains, is a question of law and is therefore subject to *de novo* review. *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir.2002). An employer violates section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5), when it "refuse[s] to bargain collectively with representatives of his employees . . . ." Collective bargaining must be conducted in good faith, and, absent specific evidence of bad faith bargaining, the Board must consider the totality of the circumstances in order to determine whether a party has negotiated in good faith. *See Cont'l Ins. Co. v. NLRB*, 495 F.2d 44, 48 (2d Cir.1974). We must uphold the Board's finding that the Academy negotiated in bad faith so long as substantial evidence in the record supports it. *TNT USA, Inc. v. NLRB*, 208 F.3d 362, 365 (2d Cir.2000). A remedial order by the Board is subject to limited judicial review, and "will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the [NLRA]." *Id.* at 367 (internal quotation marks omitted).

■ We disagree that *Driftwood* establishes a *per se* rule which supercedes the Board's long-established "totality of circumstances" inquiry into whether a party negotiated in bad faith. *Driftwood* merely states that "[t]he withdrawal of a proposal by an employer without good cause is *evidence* of a lack of good faith bargaining by the employer in violation of Section 8(a)(5) of the Act where the proposal has been tentatively agreed upon . . . ." *Driftwood*, 312 NLRB at 252 (emphasis added) (quoting *Mead Corp. v. NLRB*, 697 F.2d 1013, 1022 (11th Cir.1983)). The Board in *Driftwood* did not baldly conclude that the employer had negotiated in bad faith simply because the employer had withdrawn from a tentative agreement without good cause. Rather, its finding that the employer intended to obstruct meaningful bargaining was based upon a "totality of [ ] circumstances." *Id.* at 253.

■ Nor did the Board apply *Driftwood* as a *per se* rule in the instant case. Rather, after specifically observing that "the mere withdrawal of a tentative agreement is *not a per se violation* of Section 8(a)(5) of the act, but is only one factor to consider in determining good or bad faith bargaining," the Board cited a variety of

circumstances which contributed to its finding that the Academy bargained in bad faith. *Suffield,* 2001 WL 1261810, at *19 (N.L.R.B. Sept.30, 2001) (emphasis added). Among these circumstances were the Academy's sudden withdrawal from the tentative agreement to provide A–Plus coverage (an agreement that it had reaffirmed shortly before), the lack of any convincing rationale for the withdrawal, the importance of the A–Plus provision to the agreement as a whole, and the fact that the agreement was nearing completion at the time of the withdrawal. *Id.* at *19–21. The totality of all of these circumstances, not the unsupported application of a *per se* rule, fueled the Board's conclusion that the Academy's true aim was to "frustrate the bargaining process." *Id.* at *21. In short, while a rule to the effect that withdrawal from a tentative agreement without good cause *per se* violates the Act might very well exceed the Board's authority, we find that no such rule was employed here.

In addressing the Academy's remaining arguments, we hold that substantial evidence supports the Board's conclusions that the Academy's withdrawal from the A–Plus coverage agreement and its unilateral subcontracting of cleaning work violated Sections 8(a) (1) and (5) of the Act. We additionally hold that the remedy imposed by the Board achieves no ends inconsistent with the NLRA.

AFFIRMED.