[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
September 10, 2004
**THOMAS  K. KAHN**
**CLERK**

No. 03-16287

D.C. Docket No. 00-01334-MD-FAM

STATE OF CONNECTICUT,

Plaintiff -Appellant,

versus

HEALTH NET, INC.,
f.k.a. Foundation Health,
HEALTH NET OF CONNECTICUT, INC., f.k.a.
Physicians Health Services of Connecticut, Inc., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

**(September 10, 2004)**

Before ANDERSON and BIRCH, Circuit Judges, and LAND*, District Judge.

_____

*Honorable Clay D. Land, United States District Judge for the Middle District of
Georgia, sitting by designation.

LAND, District Judge:

This appeal presents an issue of first impression in this Circuit: whether a state, after obtaining assignments from some of its citizens for claims that those citizens have under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), has standing to assert those claims on behalf of its citizens in federal court. We conclude that Appellant, the State of Connecticut ("Connecticut"), in its capacity as assignee, has failed to demonstrate that it has suffered or will suffer an actual or imminent invasion of a legally protected interest that is concrete and particularized. Therefore, Connecticut does not have standing to pursue its claims, as an assignee, under Article III of the United States Constitution. We also hold that Connecticut does not have statutory standing under ERISA to pursue the claims of its citizens in its capacity as *parens patriae*. Accordingly, we affirm the judgment of the district court dismissing Connecticut's Complaint.

BACKGROUND

Connecticut, on behalf of its citizens, sued eight managed health care companies alleging violations of ERISA. Specifically, Connecticut contends that the companies violated ERISA by using inappropriate and arbitrary guidelines as the basis of coverage denials; by employing prescription drug formularies in a

manner that obstructs enrollee access to medically necessary prescription drugs; by failing to make timely payments to providers; by failing to respond to enrollee letters and phone calls; and by failing to disclose to enrollees essential information about the health insurance plans upon which the enrollees rely. Prior to filing suit, Connecticut obtained assignments from four of its citizens who were enrollees in the managed care companies' ERISA plans. Connecticut brings the present action in its capacity as assignee of the individual rights of these four enrollees and in its capacity as *parens patriae.* The district court dismissed Connecticut's Complaint for lack of standing and alternatively for lack of prosecution.[1]

Prior to filing the lawsuit giving rise to the present appeal, Connecticut filed a separate lawsuit against a managed care company claiming that its handling of certain prescription drug claims violated ERISA. Although the claims were slightly different and only one managed health care company was involved, Connecticut asserted the same bases for standing in that lawsuit as in the present one—as an assignee of its citizens' ERISA rights and as *parens patriae.* In the previous case, the United States District Court for the District of Connecticut dismissed Connecticut's lawsuit, finding that Connecticut lacked standing to

---

[1]In addition to finding a lack of standing, the district court found that Connecticut's failure to attend a docket call authorized dismissal for failure to prosecute. Connecticut contends it never received notice of the docket call.

pursue its claims. *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 103 F. Supp. 2d 495 (D. Conn. 2000). Connecticut appealed that decision. While its appeal was pending in the Second Circuit, Connecticut filed in the Connecticut district court the lawsuit that is the subject of the present appeal to this Court. The Connecticut district court stayed the proceedings in the present action pending the Second Circuit Court of Appeals' resolution of the appeal in the previous action.

While Connecticut's appeal to the Second Circuit remained pending, the Judicial Panel on Multidistrict Litigation transferred this case to the United States District Court for the Southern District of Florida for coordinated pretrial management in the pending multidistrict litigation against various health management companies. *See In re Managed Care Litigation*, No. 00-1334-MD (S.D. Fla. filed Apr. 17, 2000). Subsequent to the transfer of this case to multi-district litigation, the Second Circuit affirmed the Connecticut district court's determination in the previous case, finding that Connecticut lacked standing to bring suit under ERISA either as an assignee or in *parens patriae*. *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 115-21 (2d Cir. 2002), *cert. denied*, 537 U.S. 878 (2002) (herein referred to as PHS). Relying in part upon the Second Circuit's decision, the Southern District of Florida subsequently dismissed the present case for lack of standing and lack of prosecution.

4

Connecticut now appeals that dismissal.  We concur with the reasoning of the Second Circuit in *Connecticut v. Physicians Health Services of Connecticut, Inc.*, 287 F.3d 110, and adopt its reasoning as our own.  Accordingly, we affirm the district court's dismissal of Connecticut's Complaint for lack of standing.

DISCUSSION

The district court's dismissal of Connecticut's Complaint for lack of standing is reviewed *de novo*.  *Freeman v. First Union Nat'l*, 329 F.3d 1231, 1234 (11th Cir. 2003).

*I.  The State's Standing as Assignee*

Four Connecticut residents assigned their rights under ERISA to the State of Connecticut.  However, no evidence exists in the record to suggest that this assignment was supported by any consideration or that the State of Connecticut has suffered, or will suffer, any type of injury as a result of the practices it claims violate ERISA.  It simply seeks to assert these claims on behalf of its citizens and for their sole benefit.

It is axiomatic that the jurisdiction of the federal courts is limited by the United States Constitution.  Specifically, Article III, Section 2, of the Constitution restricts federal courts to deciding "Cases" and "Controversies."  U.S. Const. art. III, § 2.  The doctrine of constitutional standing has emerged from the Supreme

5

Court's interpretation of the meaning of these two terms—"Cases" and "Controversies." "Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue." *Sierra Club v. Morton*, 405 U.S. 727, 731-32, 92 S. Ct. 1361, 1364, 31 L. Ed. 2d 636 (1972).

At an "irreducible constitutional minimum," Article III standing requires that the plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (internal quotation marks, citations, and footnote omitted). Generally, the plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975).

In the present appeal, Connecticut does not contend that it has suffered any specific injury to itself. The assignments in this case are virtually identical to those at issue in PHS; they do not "confer actual rights or benefits under ERISA on the State .... The right to recover benefits or to seek money damages remains with the assignors." PHS, 287 F.3d at 115. For the reasons set out in Part II of the

6

Second Circuit opinion in <u>PHS</u>, 287 F.3d at 115-19, we hold in this case that Connecticut, in its capacity as assignee, has failed to allege an actual or imminent invasion of a legally protected interest that is "concrete and particularized."[2] Accordingly, the district court properly concluded that Connecticut, in its capacity as assignee, lacked Article III standing.

## II. The State's Claims as Parens Patriae

Connecticut also contends that it has standing to bring claims for violation of ERISA in its *parens patriae* capacity. *Parens patriae* is a common law doctrine that permits states to sue under certain limited circumstances to enforce what the Supreme Court has called "quasi sovereign" interests. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 603-04, 102 S.Ct. 3260, 3266-67, 73 L.Ed. 995, 1005-06 (1982).

Like the Second Circuit, we decline to address the issue of Article III *parens patriae* standing, <u>see</u> <u>PHS</u>, 287 F.3d at 119-20, because we hold that Connecticut lacks statutory standing to sue in *parens patriae* to enforce the

---

[2]The facts giving rise to the present appeal are distinguishable from those cases in which this Court has recognized the standing of certain health care provider-assignees who assert ERISA claims under 29 U.S.C. § 1132(a). Unlike Connecticut, the provider-assignees in those cases were able to assert separate injuries sufficient to satisfy the requirements for Article III standing. *See HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001) (recognizing standing of health care provider-assignee to sue for recovery of benefits where assignments were not prohibited under the plan in question); *Cagle v. Bruner*, 112 F.3d 1510, 1514-15 (11th Cir. 1997) (per curiam) (same).

alleged ERISA violations in this case. When a state sues in *parens patriae* to enforce a federal statute, it must demonstrate that, in enacting the statute, Congress clearly intended that the states be able to bring actions in that capacity. *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 260-66, 92 S.Ct. 885, 890-93, 31 L.Ed. 184, 191-95 (1972). No such intention can be derived from a plain reading of ERISA. The specific section upon which Connecticut relies, Section 502(a)(3) of ERISA, provides that only "a participant, beneficiary or fiduciary" may bring suit. 29 U.S.C. § 1132(a)(3). Nothing in this statutory provision suggests that a state may bring lawsuits on behalf of its citizens to enforce ERISA. In fact, the plain language of the statute supports the conclusion that Congress had no such intention. Accordingly, following the Second Circuit in PHS, see 287 F.3d at 120-22, we find that Connecticut lacks statutory standing to proceed in *parens patriae*.[3]

---

[3]Connecticut attempts to bootstrap its assignment argument with its *parens patriae* claim, contending that by permitting assignment of ERISA claims under certain circumstances Congress has evidenced its intent to permit states to proceed *parens patriae* upon obtaining assignments from its citizens. The Court rejects this contention, finding that if Congress truly intended for the states to be able to proceed *parens patriae* to enforce ERISA it could have plainly said so.

CONCLUSION

Based on the foregoing, the judgment of the district court is AFFIRMED.[4]

---

[4]In light of our conclusion that Connecticut lacks standing to pursue its claims, we find it unnecessary to determine whether its Complaint should also be dismissed for lack of prosecution or based upon principles of *res judicata* and collateral estoppel.