**APCC SERVICES, INC.,**
**et al., Plaintiffs,**

**AT & T CORPORATION, Defendant.**

**No. CIV.A. 99–0696 ESH.**

United States District Court,
District of Columbia.

March 28, 2003.

Sean Michael Hanifin, Jeffrey John Ward, Ross, Dixon & Bell, LLP, Washington, DC, Michael W. Ward, Buffalo Grove, IL, C. Barry Montgomery, Hall Adams, III, Edward R. Moor, Williams Montgomery & John, Chicago, IL, for Plaintiffs.

Clifford J. Zatz, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, Kathryn Elizabeth Thiel, Oakton, VA, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiffs have brought suit under section 206 of the Telecommunications Act of 1996, 47 U.S.C. § 206, which requires Interexchange Carriers ("IXCs") such as defendant AT & T to pay "dial-around" compensation to payphone service providers ("PSPs") for certain long distance calls originating from their payphones. Plaintiffs seek payment of dial-around compensation that they allege defendant owes the PSPs they represent. Defendant filed this motion to dismiss for lack of subject matter jurisdiction challenging plaintiffs' standing to bring suit. Defendant argues that as assignees of the PSPs, plaintiffs have suffered no injury-in-fact of their own and have no personal stake in the outcome of the litigation. Defendant also argues that even if plaintiffs have standing, the assignments are not valid under the applicable state law. Plaintiffs claim that they have standing based on the assignments, or in the alternative, they have associational standing. Despite the fact that defendant failed to raise this jurisdictional defect during the four years that this case

has been pending, the Court must agree that plaintiffs lack standing based on the assignments executed by the PSPs, and they cannot satisfy the requirements of associational standing. Therefore, defendant's motion to dismiss will be granted.

## BACKGROUND

Plaintiffs APCC Services Inc.,[1] Data Net Systems, LLC, Jaroth, Inc. d/b/a Pacific Telemanagement Services, NSC Telemanagement Corp., Davel Communications Group, Inc., and Peoples Telephone Company, Inc. filed this action on behalf of more than one thousand PSPs that own and operate over 400,000 public payphones throughout the United States.[2] (First Amended Complaint ["Am. Compl."] ¶ 1.) Five of the six plaintiffs are "aggregators," or clearinghouses, created to streamline the billing and collection of dial-around compensation from IXCs.[3] Defendant is a common carrier of telephone calls and is subject to the compensation payment obligations mandated by section 276 of the Communication Act of 1934, as amended, 47 U.S.C. § 276. (*Id.* ¶ 10.)

Pursuant to section 276, defendant is required to compensate PSPs for completed access code and toll free calls that are made using PSPs' payphones and carried over defendant's telephone network facilities. (*Id.* ¶ 1.) PSPs contract with aggregators to facilitate the billing and payment process. Thus, in return for a fee from the PSPs, plaintiffs provide billing information to defendant's collection agent—the National Payphone Clearinghouse (NPC), collect payment from the NPC, and distribute the dial-around compensation to the PSPs they represent. (Pls.' Mem. at 5).

Plaintiffs bring this suit as assignees of the claims of the PSPs they represent. The assignments provide that each PSP "assigns, transfers and sets over to [plaintiff] for purposes of collection all rights, title and interest of the [PSP] in the [PSP's] claims, demands or causes of action for 'Dial–Around Compensation.'" (Def.'s Mem. Ex. A at 1.)[4] Each assignment also appoints plaintiffs as attorney-in-fact with the power to do all acts necessary to collect dial-around compensation, including the power to retain counsel, file lawsuits, and enter into settlements. (*Id.*) In addition, assignors agree to be bound by any final determinations in court or regulatory proceedings prosecuted by plaintiffs on the PSPs' behalf. (*Id.*) The assignments do not provide plaintiffs the right to retain or share in any proceeds of the litigation. (*Id.*)

Defendant argues that since plaintiffs sue as assignees who have not suffered

---

1. Plaintiff APCC Services's parent company, the American Public Communications Council, Inc., is a non-profit corporation established to "effectively represent the interest of the public communications industry." (Def.'s Reply Ex. B.) It is the organization that represents the PSPs' interests in administrative matters before the FCC. (Def.'s Reply at 7 n. 4.) However, APPC Services, Inc. is a for-profit company.

2. PSPs own, install, operate, manage, or maintain payphone services and facilities which enable callers to access the telephone network when away from their home or office. They recover the cost of the payphone services and facilities by receiving payment for their use from callers or from carriers. (Am.Compl.¶ 14.)

3. This motion is directed only to the aggregator plaintiffs and not plaintiff Peoples Telephone Company, which is the only plaintiff in this case that brings this action on its own behalf. Consequently, for the purposes of this Memorandum Opinion, the term "plaintiffs" excludes Peoples Telephone Company.

4. During discovery, plaintiffs produced nearly 1,300 identical assignments from the PSPs they represent. (Def.'s Mem. at 2 n. 2.)

any injury-in-fact of their own and have no personal stake in the outcome of the litigation, they do not have standing to sue and their claims should be dismissed for lack of subject matter jurisdiction. Alternatively, they argue that the assignments to plaintiff APCC Services are not valid under the applicable state law so that even if this plaintiff has standing, its claims should be dismissed. Since the Court concludes that none of the plaintiffs has standing to sue as assignees or as representatives of the PSPs, it need not address the validity of plaintiff APCC Service's assignments.

## LEGAL ANALYSIS

### I. Legal Standard

Defendant's motion to dismiss for lack of standing is a challenge to the Court's subject matter jurisdiction brought pursuant to Fed.R.Civ.P. 12(b)(1). "For purposes of ruling on a motion to dismiss for want of standing . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The burden is on plaintiffs to establish the elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ Questions regarding both constitutional and prudential requirements for standing are at issue here. Constitutional standing requirements are drawn from Article III and require plaintiffs to demonstrate "(1) a concrete and particularized actual or imminent injury (2) that is fairly traceable to Defendant's conduct (3) which a favorable court decision will redress." *Id.* at 560, 112 S.Ct. 2130. "These requirements together constitute the 'irreducible constitutional minimum' of standing, which is an 'essential and unchanging part' of Article III's case or controversy require-

ment." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130).

■ The injury-in-fact requirement for standing is met only if the party bringing the action suffers an injury as a direct result of the challenged conduct. *Lujan*, 504 U.S. at 563, 112 S.Ct. 2130. Plaintiffs must also demonstrate that they have a concrete private interest in outcome of the suit. *Id.* at 573, 112 S.Ct. 2130. The concrete interest must be related to the injury-in-fact and consist of obtaining compensation for, or preventing, the violation of a legally protected right. *Vermont Agency*, 529 U.S. at 776, 120 S.Ct. 1858.

■ The prudential requirements for standing are judicially imposed limits on the exercise of federal jurisdiction. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). These include the "general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Federal courts have adopted prudential limits on standing in order "to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

## II. Plaintiffs' Standing as Assignees

█ Plaintiffs are assignees of the PSPs that claim that defendant owes them dial-around compensation, and they argue that they have standing based on these assignments. Their position is that an assignment from an injured party satisfies the constitutional standing requirement of a concrete injury traceable to defendant's conduct. Defendant challenges plaintiffs' standing relying on a recent Second Circuit case which held that where an assignment does not convey a concrete stake in the outcome of the litigation, the assignee does not "suffer an injury of a nature that would confer standing upon it under Article III of the Constitution." *Connecticut v. Physicians Health Services of Conn.*, 287 F.3d 110, 115 (2d Cir.2002) [hereinafter *"Physicians Health"*].

The Second Circuit's analysis in *Physicians Health* is persuasive and that case is indistinguishable from the instant one. In *Physicians Health*, the State of Connecticut brought suit under ERISA against an insurance company offering managed care plans to Connecticut residents. *Id.* at 112. The State asserted standing to sue as the assignee of participants in the managed care plans who had been injured by the plans' actions and who had assigned their right to seek injunctive or other equitable relief to the State. *Id.* at 113. The assignments did not, however, include the right to sue for money damages. *Id.* The Court explained that "[t]ypically, the assignee, obtaining the assignment in exchange for some consideration running from it to the assignor, replaces the assignor with respect to the claim or the portion of the claim assigned, and thus stands in the assignor's stead with respect to both injury and remedy." *Id.* at 117. In *Physicians Health*, there was no such exchange, and the assignments "d[id] not shift the loss suffered by individual enroll-

ees from the alleged breach … from the individuals to the State." *Id* at 116. As a result, the Court concluded that the assignment did not confer standing on the State.

Plaintiffs' situation is precisely the same as that of the State of Connecticut. The assignments on which plaintiffs rely for standing do not shift the loss suffered by the PSPs to the aggregators that represent them. Nor did plaintiffs obtain their assignments in exchange for consideration to the PSPs. And while the Second Circuit recognized that there are some situations where the assignment of a claim may confer standing on an assignee who has not incurred an injury, expense or loss in exchange for the assignment, *id.*, the Court made clear that a such a " 'claim' cannot simply refer to a right to bring suit." *Id.* 118 n. 8. Since plaintiffs' assignments in this case grant only the right to sue and not a right to a remedy, plaintiffs have failed to establish standing.

█ In response, plaintiffs argue that they have a stake in the outcome of this litigation, even though they are not entitled to damages, because their compensation for billing and collection activities is based upon the number of payphones and telephone lines their PSPs have active in any billing quarter, and to the extent that the PSPs and the payphone industry are not profitable due to systematic undercompensation by defendant, plaintiffs' compensation is diminished and its business is threatened. (Pls.' Opp. at 7.) But the Supreme Court has made clear that the interest required to create standing must "consist of obtaining compensation for, or preventing, the violation of a legally protected right." *Vermont Agency*, 529 U.S. at 772, 120 S.Ct. 1858. "[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing pur-

poses." *Id.* at 773, 120 S.Ct. 1858. Consequently, since plaintiffs' interest is "merely a byproduct" of the suit and not an interest in compensation for a violation of a legally protected right, their interest is too attenuated to give rise to a cognizable injury in fact under Article III.[5]

Plaintiffs also suggest that *Physicians Health* is inapposite because its holding is based on ERISA's limitations as to the classes of people who may file civil enforcement actions. (Pls.' Opp. at 11.) While the civil enforcement provisions of ERISA were the basis for the district court's holding, the Second Circuit did not rely on the lower court's reasoning. 287 F.3d at 115 ("We reach the same conclusion as that of the district court, that the State lacks standing to pursue this action as an assignee of the eight plan participants' right to bring an action in equity, although our reasoning differs from the district court's."). Thus, plaintiffs cannot distinguish their case from the plaintiff's situation in *Physicians Health.*

Nor can plaintiffs rely on *Vermont Agency* to save their claim. *Vermont Agency* involved a challenge to the standing of a citizen to sue on behalf of the United States government in a *qui tam* action brought under the False Claims Act ("FCA"). The FCA allows a private person to bring a civil action "for the person and for the United States Government . . . in the name of the Government," 31 U.S.C. § 3730(b)(1), against anyone who, *inter alia,* presents "a false or fraudulent claim for payment" to the government. § 3729(a). The statute also provides plaintiffs with a right to a portion of any dam-

ages recovered on behalf of the government. § 3730(d)(1).

The Supreme Court concluded that plaintiff had standing to bring suit on behalf of the government under the FCA even though he did not have a concrete private interest in the outcome of the suit that was related to the injury-in-fact. The Court found that "the United States' injury-in-fact suffice[d] to confer standing" on the plaintiff because the "FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." *Vermont Agency,* 529 U.S. at 773, 120 S.Ct. 1858. Notably, assignments effected by the FCA include both the right to sue and the right to the remedy—thus, assigning an interest in the suit directly related to the assignor's original injury. The Court's analysis also relied heavily on "the long tradition of *qui tam* actions in England and the American Colonies." *Id.* at 774, 120 S.Ct. 1858.

Plaintiffs read *Vermont Agency* too broadly. While the Supreme Court held that an "assignee of a claim has standing," *id.* at 773, 120 S.Ct. 1858, the case does not stand for the proposition that all assignments confer standing. Such a reading would clearly violate the constitutional requirements for standing articulated in *Lujan.* The Supreme Court found that the plaintiff in *Vermont Agency* had standing to bring suit based on three factors: (1) a statutory assignment of (2) both the right to sue and the right to a remedy, and (3) historical support for the action. None of these factors is present in this case, and thus, this case is distinguishable from *Vermont Agency.*

---

**5.** Plaintiffs' reliance on the practice of the FCC and defendant of using aggregators to assist in the collection of dial-around compensation to bolster a claim of standing is likewise unavailing. (*See* Pls.' Opp. at 2–8.) The business practices of the various players in a regulatory scheme do not confer Article III standing on plaintiffs nor do they serve to give the Court subject matter jurisdiction over this case.

First, unlike a *qui tam* relator, plaintiffs in this case were not assigned claims pursuant to a grant of statutory authority. Second, plaintiffs do not have a concrete private interest in the outcome of this suit that is directly related to the injury that serves as the basis for the suit. Moreover, the outcome of the suit will not affect plaintiffs "in a personal and individual way," *Lujan*, 504 U.S. at 560 n. 1, 112 S.Ct. 2130, since, unlike a typical assignment, none of the remedies sought will flow to plaintiffs as assignees. *See, e.g., Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950) (assignee of licensor has standing to sue licensee for royalty payments due under license agreement and to retain payments recovered); *Hubbard v. Tod*, 171 U.S. 474, 19 S.Ct. 14, 43 L.Ed. 246 (1898) (general assignee has standing to sue in the name of debtor/assignor pursuant to Iowa statute); *I.V. Services of America v. Trustees of American Consulting Engineers Council Insurance Trust Fund*, 136 F.3d 114, 117 (2d Cir. 1998) (standing where assignment included right to insurance benefits); *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1153–54 (2d Cir.1993) (granting standing to *qui tam* plaintiff); *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir.1993).[6] Finally, there is no historical support for granting standing by assignment in this case.

Plaintiffs' reliance on *American Public Communications Council, Inc. v. Allnet Communication Services, Inc.*, 1993 WL 544300, at *1 (D.D.C.1993), *vacated on other grounds*, 959 F.Supp. 19 (D.D.C.1997), is also misplaced. Plaintiffs suggest that this Court "summarily rejected" an argument "identical" to that currently raised by defendant when, in fact, *Allnet* never addressed the issue of plaintiff's standing as an assignee. As here, the plaintiff in *Allnet* sued to recover dial-around compensation that defendant Allnet allegedly owed plaintiff's member PSPs. Defendant challenged plaintiff's standing to sue arguing that plaintiff's members were not entitled to dial-around compensation. *Id.*, at *1. If that were the case, the PSPs would not have had standing to assert a claim that could be assigned. Here, there is no question that the PSPs have a basis for a claim. Rather, the question is whether plaintiffs have standing to assert the PSPs' claims as assignees. That issue was simply not addressed in *Allnet*.

In short, plaintiffs, like the State of Connecticut, "do[ ] not, through th[e] assignment[s], possess the requisite interest that is or is threatened to be injured by [defendant's] conduct." 287 F.3d at 119. Consequently, they do not have standing as assignees to bring suit for damages on behalf of the PSPs.

### III. Associational Standing

■ Plaintiffs also argue that they would have standing, even if there were no assignments, based on the doctrine of associational standing recognized in *Hunt v.*

---

**6.** Plaintiffs also rely on *Paoloni v. Goldstein*, 200 F.R.D. 644 (D.Col.2001), where the court granted standing to brokers to sue as assignees of clients who had been defrauded even though the brokers had not suffered a direct injury. While it is not clear whether the assignments included the right to retain a portion of any damages recovered, that case relies on *Feeder Line Towing Service, Inc. v. Toledo, Peoria & Western R.R. Co.*, which

clearly did. 539 F.2d 1107, 1110 (7th Cir. 1976) ("Prior to the filing of this action, plaintiff paid ... the owner ... $60,808.64 in full settlement of all claims and in return [the owner] assigned all claims it possessed for the loss sustained."). However, to the extent that the assignments in *Paoloni* did not involve the right to retain a portion of the damages, it is unconvincing and reflects a misreading of *Vermont Agency*.

*Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). (Pls.' Opp. at 18–21.)[7] The Supreme Court has articulated the requirements for associational standing as follows:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 343, 97 S.Ct. 2434.

The first two *Hunt* conditions are satisfied in this case. First, there is no question that the PSPs that plaintiffs represent have standing to challenge defendant's alleged underpayment of dial-around compensation. Second, plaintiffs' sole purpose is to collect the dial-around compensation owed to the PSPs they represent—the same interest they seek to protect through this litigation. *Id.* at 343–44, 97 S.Ct. 2434. Plaintiffs cannot, however, satisfy the third prong of *Hunt*, for the money damages plaintiffs seek to collect are the kind that ordinarily require individual participation.[8]

This result is clearly mandated by D.C. Circuit precedent. First, in *Telecommunications Research & Action Center v. All-net Communication Servs., Inc.,* 806 F.2d 1093 (D.C.Cir.1986) [hereinafter *"TRAC"*], the Circuit held that "the money damage claims TRAC seeks to advance are the kind that ordinarily require individual participation, so that TRAC may not proceed in the format it has selected." *Id.* at 1095. In *TRAC,* a non-profit association concerned with promoting fair, reasonable, and non-discriminatory rates for communications services, sued to recover money damages from a utility that allegedly overcharged its members. *Id.* at 1093–94. The Court rejected plaintiff's argument that individualized proof of damages by its members would not be required because damages could be calculated by a simple formula and concluded that plaintiff did not have standing to sue for money damages on behalf of its members. *Id.* at 1095.

Subsequently, in *Air Transp. Ass'n v. Reno,* 80 F.3d 477 (D.C.Cir.1996), the Court held that an association lacked standing to seek an order requiring a government agency to reimburse its members for expenses they incurred where individualized proof was necessary and the members were not participating in the lawsuit. *Id.* at 483. Relying on *TRAC,* the Court refused to grant associational standing where detailed and individualized proof from each airline would be needed. Thus, while the Court "acknowledge[d] that a request for monetary relief by an associa-

---

7. Plaintiffs refer to this doctrine as "representational standing" (Pls.' Opp. at 18), but as is clear from *Hunt,* it is more appropriately referred to as "associational standing." 432 U.S. at 343, 97 S.Ct. 2434.

8. Since APCC Services, Inc. is not a trade association or "an organization of members who pay dues," but is a for-profit corporation that charges a fee for rendering services, defendant argues that they cannot have associational standing under *Hunt. (See* Def.'s Reply at 6–7.) In *Hunt,* the Supreme Court found that a state commission, which was not a "traditional voluntary membership organization," had associational standing to assert the claims of its members because it possessed "all of the indicia" of a membership organization. 432 U.S. at 342–44, 97 S.Ct. 2434. Since this Court concludes that plaintiffs fail to meet the requirements for associational standing, it need not determine whether plaintiffs are the equivalent of an association for standing purposes.

tion does not *absolutely* preclude standing in all cases, the question in each case is whether the monetary relief can be awarded without 'individualized proof.'" *Id.* at 484 (emphasis in original).

As in these Circuit cases, the damage claims of the PSPs "are not common to the entire membership, nor shared by all in equal degree," and therefore, "individualized proof" will be necessary. *Warth v. Seldin,* 422 U.S. 490, 515–16, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Given the undisputed need for individualized proof, it is of no significance that plaintiffs have the necessary records or that it would foster "administrative convenience and administrative efficiency" if plaintiff aggregators were permitted to pursue claims on behalf of the PSPs. (Pls.' Opp. at 21.) A similar argument was considered and rejected by the Court in *TRAC*:

> We think we are not at liberty to break new ground in this case, and believe that the Supreme Court's reference to the need for "individualized participation" in *Hunt* implied something more than individual in-court testimony to establish the fact and extent of injury.

806 F.2d at 1095. *See also infra* note 9.

Confronted by this binding precedent, plaintiffs attempt to salvage their claims by relying on *United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996) [hereinafter *"Brown Group"*]. (*See* Pls.' Opp. at 19–20.) Plaintiffs' reliance is, however, misplaced. In *Brown Group,* the Supreme Court addressed the prudential nature of

*Hunt's* third prong as it applied to a federal statute. It reaffirmed *Hunt's* "suggest[ion] that an association's action for damages running solely to its members would be barred for want of the association's standing to sue" remained the law, *id.* at 546, 116 S.Ct. 1529, but determined that "in enacting the WARN Act, Congress intended to abrogate this otherwise applicable standing limitation so as to permit the union to sue for damages running to its workers, and ... had the constitutional authority to do so." *Id* at 546, 116 S.Ct. 1529.[9] Thus, *Brown Group* was limited to the proposition that Congress may grant an express right to sue for damages to persons who would otherwise be barred by purely prudential standing requirements.

Obviously, there is no statute here that grants associational standing to plaintiffs nor is there any legal basis for extending *Brown Group* to cover the instant case. On the contrary, case law subsequent to *Brown Group* continues to reaffirm the D.C. Circuit's holdings in *TRAC* and *Air Transport. See, e.g., Pa. Psychiatric Society v. Green Spring Health Servs., Inc.,* 280 F.3d 278 (3d Cir.2002) (associational standing is improper for claims requiring a fact-intensive-individual inquiry); *The Legal Aid Society v. City of New York,* 114 F.Supp.2d 204, 213–14 (S.D.N.Y.2000); *Dallas Police Ass'n. v. City of Dallas,* 1999 WL 604850, at *2 (N.D.Tex.1999); *Chicago Journeymen Plumbers' Local Union 130, U.A. v. Personnel Bd.,* 154 L.R.R.M. (BNA) 2915, 1996 WL 288631, at *2 (N.D.Ill.1996). The decisions in *TRAC*

---

9. In addition, *Brown Group* rejected plaintiff's invitation to hold that the third prong of *Hunt* could be satisfied by a "simplified" claim for monetary relief. *Id.* at 545 n. 5, 116 S.Ct. 1529. Rather, the Court stated:

> In light of our conclusion that in the WARN Act Congress has abrogated the third prong

of the associational standing test, we need not decide here whether, absent congressional action, the third prong would bar a "simplified" claim for damages.

*Id.* at 554, 116 S.Ct. 1529.

and *Air Transport* govern this case,[10] and while it may be that the Circuit has not adopted a *per se* rule barring associational standing in all claims for money damages, *TRAC,* 806 F.2d at 1095, these cases clearly preclude a finding of associational standing here.

### CONCLUSION

Since plaintiffs lack standing, the Court has no subject matter jurisdiction and their claims must be dismissed.[11] As a result, the complaint of the plaintiffs/assignees[12] is dismissed with prejudice. A separate Order accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on defendant AT & T's Motion to Dismiss Assignee Plaintiffs' Claims [58–1]. Based on the pleadings, the record, and relevant case law, it is hereby

**ORDERED** that defendant's motion is **GRANTED**; and it is

**FURTHER ORDERED** that the plaintiffs' complaint (with the exception of the complaint filed by Peoples Telephone Co., Inc.) is **DISMISSED WITH PREJUDICE.**

---

10. Significantly, the Court in *Air Transport* denied rehearing and suggestion for rehearing in banc on May 24, 1996, which was several weeks after *Brown Group* was decided.

11. Plaintiffs appear to suggest that they should be permitted to amend their complaint. (Pls.' Opp. at 28 n. 4.) This is not an available option. *See, e.g., Lans v. Gateway 2000, Inc.,* 84 F.Supp.2d 112, 115 (D.D.C. 1999).

12. These plaintiffs include APCC Services Inc., Data Net Systems, LLC, Jaroth, Inc. d/b/a Pacific Management Services, NSC Telemanagement Corp., and Davel Communications Group, Inc., but not the one individual PSP—Peoples Telephone Company, Inc.