**APCC SERVICES, INC.,**
**et al., Plaintiffs,**

**v.**

**AT & T CORPORATION, Defendant.**

**No. CIV.A. 99–0696ESH.**

United States District Court,
District of Columbia.

Sept. 3, 2003.

**42**

Sean Michael Hanifin, Jeffrey John Ward, Ross, Dixon & Bell, LLP, Washington, DC, Michael W. Ward, Buffalo Grove, IL, C. Barry Montgomery, Hall Adams, III, Edward R. Moor, Williams Montgomery & John, Chicago, IL, for plaintiffs/counter–defendant.

Clifford J. Zatz, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, Kathryn Elizabeth Thiel, AT&T Telephone & Telegraph Company, Oakton, VA, for defendants/counter–claimants.

### MEMORANDUM OPINION

HUVELLE, District Judge.

On March 28, 2003, this Court dismissed claims brought by five of six plaintiffs against AT & T for payment of dial-around compensation allegedly owed to the payphone service providers ("PSPs") that plaintiffs represent.[1] The Court concluded that it lacked subject matter jurisdiction, finding that plaintiffs lacked Article III standing based on either the assignments executed by the PSPs or the doctrine of associational standing.[2] *See APCC Services, Inc. v. AT & T Corp.*, 254 F.Supp.2d 135 (D.D.C.2003) [hereinafter *"APCC I"*]. In response to this decision, the aggregator plaintiffs have now filed a Motion for Reconsideration ["Mot. for Recons."] and a Motion for Leave to Amend Complaint. Plaintiff Peoples Telephone Company has also filed a Motion for Leave to Amend.

In their Motion for Reconsideration, plaintiffs cite, for the first time, a host of authorities that recognize the validity of an assignment for collection and that offer a principled basis for differentiating an assignment of title to a claim, which vests assignees with legally enforceable rights, from an assignment merely of the right to bring suit, which does not. These authorities persuasively distinguish the instant matter from *Connecticut v. Physicians Health Services of Connecticut. Inc.*, 287 F.3d 110 (2d Cir.2002)—the primary case on which the Court relied in its prior Memorandum Opinion. The Court therefore no longer believes that this case can be decided based on *Physicians Health,* and instead will hold that the aggregator plaintiffs have standing based on the assignments from the PSPs they represent. Because the Court is vacating its March 28, 2003 Memorandum Opinion, it need not

[1] This issue has spawned two other suits currently pending in this Court. *APCC Services, Inc. v. Cable & Wireless, Inc.*, Civ. No. 02–158; *APCC Services, Inc. v. Sprint Communications Co.*, Civ. No. 01–642.

[2] The Court's Memorandum Opinion and Order in *APCC I* was directed only to the aggregator plaintiffs and not plaintiff Peoples Telephone Company, which is the only plaintiff in this matter that has brought an action on its own behalf. Thus, for the purposes of this Memorandum Opinion, the term "plaintiffs" excludes Peoples Telephone Company except where it is explicitly referenced.

reach plaintiffs' motions to amend. It must, however, address defendant's challenge to the validity of plaintiff APCC Services' assignments under Virginia law. The Court finds this challenge to be unavailing. Accordingly, defendant's Motion to Dismiss Assignee Plaintiffs' Claims will be denied.

## BACKGROUND

Plaintiffs APCC Services, Inc., Data Net Systems, LLC, Jaroth, Inc. d/b/a Pacific Telemanagement Services, NSC Telemanagement Corp., Davel Communications Group, Inc., and Peoples Telephone Company, Inc. filed this action pursuant to sections 206 and 207 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 206, 207, on behalf of more than one thousand PSPs that own and operate over 400,000 public payphones throughout the United States.[3] (First Amended Complaint ["Am. Compl."] ¶¶ 1, 11.) Five of the six plaintiffs are "aggregators," or clearinghouses, created to streamline the billing and collection of dial-around compensation from common carriers of telephone calls, like defendant, who are subject to the compensation payment obligations mandated by section 276 of the Act. (Id. ¶ 10.) Pursuant to section 276, defendant is required to compensate PSPs for completed access code and toll free calls that are made using PSPs' payphones and carried over defendant's telephone network facilities. (Id. ¶ 1.) PSPs contract with aggregators to facilitate the billing and payment process.

Plaintiffs bring this suit as assignees of the claims of the PSPs they represent. The assignments provide that each PSP "assigns, transfers and sets over to [plaintiff] for purposes of collection all rights, title and interest of the [PSP] in the [PSP]'s claims, demands or causes of action for 'Dial–Around Compensation.'" (AT & T's Motion to Dismiss Assignee Plaintiffs' Claims ["AT & T Mot. to Dismiss"] Ex. A at 1.)[4] The assignments do not give plaintiffs the right to retain or share in any proceeds of the litigation. (Id.)

In January 2003, defendant filed a motion to dismiss for lack of subject matter jurisdiction, which challenged plaintiffs' standing to bring suit. Defendant argued that as assignees of the PSPs, plaintiffs did not suffer an injury-in-fact of their own and did not have a personal stake in the outcome of the litigation. Defendant further argued that even if plaintiffs have standing, APCC Services' claims cannot be assigned under applicable state law, and therefore, the assignments are invalid. Because the Court concluded that plaintiffs did not have standing to sue, it did not reach the validity of APCC Services' assignments. See APCC I, 254 F.Supp.2d at 138. Defendant's motion was granted and the claims asserted by the aggregator plaintiffs were dismissed. Id. at 144.

Plaintiffs have now moved the Court to reconsider its decision or, alternatively, for leave to amend their complaint to substitute several independent payphone service providers to act as class representatives or to name all independent payphone service

---

**3.** PSPs own, install, operate, manage, or maintain payphone services and facilities which enable callers to access the telephone network when away from their home or office. They recover the cost of the payphone services and facilities by receiving payment for their use from callers or from carriers. (Am.Compl.¶ 14.)

**4.** During discovery, plaintiffs produced nearly 1,300 identical assignments from the PSPs they represent. (AT & T's Memorandum in Support of its Motion to Dismiss Assignee Plaintiffs' Claims at 2 n. 2.)

providers on whose behalf suit was initially brought. Plaintiff Peoples Telephone Company has also filed a similar motion for leave to amend. Defendant opposes these motions, arguing that plaintiffs are procedurally barred from moving for reconsideration; that the Court's prior finding of lack of standing is correct; and that leave to amend may not be granted given the lack of subject matter jurisdiction.

## LEGAL ANALYSIS

### I. Rule 54(b) Standard

Plaintiffs request the Court to reconsider its March 28, 2003 Memorandum Opinion and Order pursuant to FED. R. CIV. P. 54(b). Under Rule 54(b), when multiple parties are involved in a case and an order adjudicating fewer than all the claims is issued, the order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties" unless the court has directed the entry of final judgment as to the particular claims addressed by the order. FED. R. CIV. P. 54(b). Thus, Rule 54(b) "addresses interlocutory judgments." *Campbell v. United States Dep't of Justice*, 231 F.Supp.2d 1, 6 n. 8 (D.D.C. 2002). "Reconsideration of an interlocutory decision is available under the standard, 'as justice requires.' " *Id.* at 7 (quoting *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C.2000)). That standard "differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)," where the Court must find "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error

or prevent manifest injustice." *Id.* In arguing that the stricter standard of Rule 60(b) should be applied, defendant disregards this important distinction.[5]

■ The Court's March 28, 2003 ruling did not dispose of the entire matter as it did not involve one of the plaintiffs—Peoples Telephone Company. Nor did the Court expressly direct the entry of final judgment with respect to the claims addressed. Consequently, the order is interlocutory, and it may be revised where "justice requires." *See* Fed.R.Civ.P. 60(b) Advisory Comm. Notes ("[I]nterlocutory judgments are not brought within the restrictions of [Rule 60(b) ], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."); *see also Childers*, 197 F.R.D. at 190.

### II. Plaintiffs' Standing as Assignees

■ In *APCC I*, the Court was persuaded by defendant's argument that plaintiffs lacked standing because they were required to remit any damages to the PSPs, and thus, did not have a concrete stake in the outcome of the litigation. In opposition, plaintiffs relied almost exclusively on *Vermont Agency of Natural Resources v. United States*, 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), arguing that the Supreme Court's decision in that case enshrines the principle that all assignments confer standing. Rejecting plaintiffs' overly expansive reading of *Vermont Agency*, the Court granted defendant's motion. While the Court remains of the view that *Vermont Agency* alone does not decide this case, plaintiffs have now pre-

---

**5.** Defendant relies on two cases that apply the stricter standard but do not specify the rules under which the moving party requested reconsideration. *See Regency Communications, Inc. v. Cleartel Communications, Inc.*, 212 F.Supp.2d 1, 3 (D.D.C.2002); *Cobell v. Nor-* ton, 263 F.Supp.2d 58, 64 (D.D.C.2003). Both cases were decided after *Campbell*, and neither challenges the view that a court may grant a motion to reconsider pursuant to Rule 54(b) "as justice requires."

sented more convincing authority for their position and have persuaded the Court that it was in error when it concluded that plaintiffs lacked standing. In particular, and as discussed below, plaintiffs have successfully differentiated the assignments at issue here, which convey legal title in the dial-around compensation claims, from those in *Physicians Health,* which conveyed merely the power of attorney to bring suit. Moreover, plaintiffs have established that the requirement that assignees ultimately account to assignors for any relief awarded is irrelevant in determining whether plaintiffs have a sufficient personal interest in the controversy to acquire standing. Accordingly, the Court concludes that it is in the interest of justice to reconsider and to vacate its March 28, 2003 Memorandum Opinion and Order.

### A.  Assignments for Collection

In their motion for reconsideration, plaintiffs present cogent arguments in support of their standing that go well beyond their initial reliance on *Vermont Agency.* Most importantly, they have for the first time now cited a long line of cases and legal treatises that recognize a well-established principle that assignees for collection purposes are entitled to bring suit where the assignments transfer absolute title to the claims. (Mot. for Recons. at 11, 14.)

This right was explicitly recognized by the Supreme Court when it upheld the right of an assignee for collection to bring suit—even where the remedy awarded was obtained for the benefit of the assignors. *Spiller v. Atchison,* 253 U.S. 117, 40 S.Ct. 466, 64 L.Ed. 810 (1920). *Spiller* involved a suit brought by the assignee of 2,000 shippers complaining that certain railroads were charging excessive rates on the interstate shipment of cattle in violation of the requirements of the Interstate Commerce Act.[6] The Supreme Court upheld Spiller's right to bring suit to recover damages awarded to cattle shippers under a reparation order made by the Interstate Commerce Commission for unlawful freight overcharges on cattle shipments based on assignments from those cattle shippers.

> The assignments were absolute in form and plainly their effect ... was to vest the legal title in Spiller. What they did not pass to him was the beneficial or equitable title. But this was not necessary to support the right of the assignee to claim an award or reparation and enable him to recover it by action at law brought in his own name but for the benefit of the equitable owners of the claims; especially since it appeared that such was the real purpose of the assignments.

*Id.* at 134, 40 S.Ct. 466. The Supreme Court thus found that the assignments conferred upon Spiller a sufficient interest in the claims to entitle him to bring suit even though he was obligated to remit the proceeds of the suit to the shippers that had assigned their claims.

Similarly, in *Titus v. Wallick,* 306 U.S. 282, 59 S.Ct. 557, 83 L.Ed. 653 (1939), the Supreme Court ruled that assignments transferring "all right, title and interest" in a claim gave petitioner the right to bring suit even though a separate agreement between the assignor and petitioner required that petitioner turn over the proceeds of the claim to the assignor. *Id.* at 286, 59 S.Ct. 557. In reaching this conclusion, the Supreme Court observed:

---

**6.** It is worth pointing out that the illegal charge provisions in the ICA under which Spiller recovered became the model for the comparable provisions in the Communications Act under which the present plaintiffs seek to recover. *See AT & T v. Cent. Office Tel., Inc.,* 524 U.S. 214, 221–22, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998).

[A]ny form of assignment which purports to assign or transfer a chose in action confers upon the transferee such title or ownership as will enable him to sue upon it. This is true even though the assignment is for the purpose of suit only and the transferee is obligated to account for the proceeds of suit to his assignor.

*Id.* at 289, 59 S.Ct. 557. It is thus well settled that the validity of an assignment (and therefore the status of the assignee as the real party in interest under FED. R. CIV. P. 17)[7] is not affected by the "parties' additional agreement that the transferee will be obligated to account for the proceeds of a suit brought on the claim." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 17 (2d Cir. 1997); *see also United States ex rel. Wolther v. N.H. Fire Ins.,* 173 F.Supp. 529, 537 (E.D.N.Y.1959) ("[A]n assignee is the real party in interest ... if he has some title, legal or equitable, to the thing assigned. The consideration paid, the purpose of the assignment, the use to be made of any proceeds collected, is immaterial.") (quotation omitted); *cf. Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1282 (9th Cir.1983) ("An assignment of claims does not prevent the assignors from receiving the benefits of litigation.").

The critical distinction differentiating between valid and invalid assignments is thus not whether the assignor will ultimately obtain the proceeds of the suit, but rather whether the assignment manifests "an intent to divest the assignor of all control and right to his claim, thereby empowering the assignee to control the cause of action and to receive its fruits." *Advanced Magnetics,* 106 F.3d at 15 (citation and quotation omitted). "An assignee for the purposes of collection holds legal title to the debt and is a real party in interest, even though the assignee must account to the assignor for whatever is recovered in this action." *Airlines Reporting Corp. v. S and N Travel, Inc.,* 857 F.Supp. 1043, 1047 (E.D.N.Y.1994); *see also* 4 JAMES WM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 17.11[1][a], [c] (3d ed. 1997) ("Under a valid assignment, the assignee of a claim becomes the real party in interest for that claim.... The assignee is real party in interest even though assignee must account to the assignor.").

Such a valid assignment must be contrasted with a "provision by which one person grants another the power to sue on and collect on a claim [which] confers on the grantee a power of attorney with respect to that claim." *Advanced Magnetics,* 106 F.3d at 17. Such an assignment— for example one that conveys merely "the power to commence and prosecute ... any suits, actions or proceedings at law or in equity in any court of competent jurisdiction"—does not demonstrate an intent to transfer ownership or title to a claim, and therefore does not entitle the assignee to bring suit in his own name. *Id.* at 14, 18; *see also Titus,* 306 U.S. at 289, 59 S.Ct. 557 ("[A] power of attorney to sue, standing alone, does not ... operate as an assignment to vest the [assignee] with such title or interest as will enable him to maintain the suit in his own name."); *Airlines Reporting,* 857 F.Supp. at 1046–47 (observing that a "person authorized to bring suit

---

**7.** Rule 17(a) requires that "[e]very action ... be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a). The rule ensures that an action will be brought by the person who is entitled to enforce the right under the governing substantive law. *See* 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1543 (2d ed.1990). Rule 17(a) does not, however, require that suit "be brought in the name of the person who ultimately will benefit from the recovery." *Id.*

solely on the basis of a power of attorney is not a real party in interest.")

■■■■ With these principles in mind, the test for determining whether an assignee may bring suit as a real party in interest is whether the assignment transfers legal title to the claim or instead merely transfers a power of attorney. There can be little question that the assignments currently before the Court, which purport to transfer *ownership* of the right to collect, give plaintiffs legal title to the dial-around-compensation claims. As such, they convey an interest in these claims sufficient to entitle plaintiffs to initiate legal action. Neither the fact that the assignments are for collection purposes nor the fact that plaintiffs are obligated under a separate agreement to remit the proceeds of any legal action to the PSPs negates plaintiffs' present interest in the claims or their right to bring suit. Defendant does not seriously contend otherwise. Instead, while acknowledging the case law described above, defendant argues that plaintiffs have erroneously conflated real party in interest status under FED. R. CIV. P. 17 with Article III standing, and that even if the holder of a valid assignment may be entitled to bring suit as the real party in interest, "the real issue before the Court is subject matter jurisdiction." (AT & T Opp. at 5.)

■■■■ Defendant is correct in pointing out that "Rule 17 does not provide an independent basis for jurisdiction" (AT & T Opp. at 5), and that a plaintiff must be both the real party in interest and have standing to bring suit. WRIGHT, *supra* § 1542. This argument, however, is something of a red herring. As the D.C. Circuit has recognized, "[s]tanding and real-party-in interest questions ... overlap to the extent that both ask whether the plaintiff has a personal interest in the controversy." *Whelan v. Abell*, 953 F.2d 663, 672

(D.C.Cir.1992). Indeed, "[g]enerally real parties in interest have standing," MOORE, *supra* § 17.10[1]. For both statuses require that plaintiffs "possess[ ] a sufficient interest in the action to entitle ... [them] to be heard on the merits." WRIGHT, *supra* § 1542. Thus, if a valid assignment transfers an interest sufficient to make the assignee a real party in interest, it logically follows that the assignee will then have the "concrete interest" in the litigation required by the standing doctrine. This is so because what has been assigned in such cases is, in effect, the legal "injury" that generates Article III standing. In other words, the assignment in such cases conveys to the assignee not merely the power to assert a claim on another's behalf, but also the right to vindicate a legal wrong done to the assignor *as if* that wrong had been done to the assignee itself. Any other conclusion would mean that a real party in interest who has been assigned a claim for collection purposes would never have standing to sue (because the underlying legal injury would have never been done to the assignee itself), which—as we have just seen—is certainly not the law. *See also* MOORE, *supra* § 17.11[1][c] (citing cases in the Second, Ninth, Tenth, and Eleventh Circuits).

And indeed, the cases cited by defendant do not suggest otherwise. Defendant relies on *Whelan* to distinguish between Article III jurisdiction and real party in interest status under Rule 17. (AT & T Opp. at 6–7.) In that case, defendants' challenge to plaintiffs' real party in interest status was barred because defendants did not raise the issue until the first day of trial—thus prejudicing the real party by undue delay. On appeal, defendants attempted to recast their real party in interest challenge into a jurisdictional challenge under Article III, which, unlike Rule 17(a), can be raised at

any time.[8] *Whelan*, 953 F.2d at 671. The Court rejected this effort, noting that plaintiffs had clearly suffered an injury and thus had standing to sue. *Id.* at 672. Defendant suggests that since the D.C. Circuit rejected the *Whelan* defendants' effort to recast a Rule 17 challenge into a standing issue, plaintiffs should similarly be precluded here from converting a standing challenge into a Rule 17 issue.

This argument, however, misconstrues both the facts of this case and the holding in *Whelan.* Plaintiffs here are not attempting to recast a standing issue as a Rule 17 issue. They merely highlight the fact, recognized in *Whelan*, that the two standards share a common element. *See id.* (observing that both standards require that "plaintiff has a personal interest in the controversy"). It is true that the D.C. Circuit recognized that a party with standing may not always be the real party in interest (*i.e.* the party with the right to bring suit under substantive law). For example, where a closely-held corporation is injured, a shareholder has standing to sue (as an injured party), but that shareholder must *also* possess the right under governing substantive law to bring suit as the real party in interest; the injury alone is not sufficient. This rule, however, does not imply its converse. And, indeed, as a leading treatise has recognized, although "not every party who meets standing requirements is a real party in interest," real parties in interest generally have standing. MOORE, *supra* § 17.10[1]. The injury that

has generated the suit is theirs to vindicate. Nothing in *Whelan* suggests otherwise. Here, the Court has now been persuaded that the assignment has given plaintiffs the requisite interest in the controversy to make them real parties in interest. And nothing has been presented that would tend to cast doubt upon their standing to sue in light of that status.

Defendant fails to cite any cases in which an assignee for collection was found to lack standing. Instead, it relies only on cases that question whether assignments for collection were made collusively in order to create federal diversity jurisdiction in violation of 28 U.S.C. § 1359.[9] (AT & T Opp. at 8–10.) These cases hold that an assignee of title solely for collection purposes may bring suit in federal court based on diversity jurisdiction only if there is complete diversity based on the *assignor's* citizenship. They do not address Article III standing. *E.g., Airlines Reporting Corp. v. S and N Travel,* 58 F.3d 857, 862–64 n. 4 (2d Cir.1995) (holding that though an assignee was the real party in interest under Rule 17(a), the assignments were collusively made for the purpose of manufacturing federal jurisdiction and therefore there was no true diversity of citizenship); *Attorneys Trust v. Videotape Computer Prods.,* 93 F.3d 593 (9th Cir.1996) (assignee of title for collection only may bring suit in federal court where court has diversity jurisdiction based on assignor's citizen-

---

**8.** Rule 17(a) provides that "[n]o action shall be dismissed on real-party-in-interest grounds until a reasonable time has been allowed after objection for ratification of commencement of the action by . . . the real party in interest. . . . This implies that the defense may *not* be raised at any time, for the real party must have the opportunity to step into the 'unreal' party's shoes and should not be prejudiced by undue delay." *Whelan*, 953 F.2d at 672. Thus, the Court held that it was an abuse of discretion to allow a Rule 17(a) defense "as

late as the start of the trial if the real party has been prejudiced by the defendant's laxness." *Id.*

**9.** Under section 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359.

ship).[10] In the present case, of course, diversity is not in dispute, as the Court's subject-matter jurisdiction is based on the existence of a federal question. As such, the cases relied upon by defendant, which having nothing to say about whether an assignee for collection has *standing* to sue, are simply inapposite.

## B. *Physicians Health*

In *APCC I,* this Court relied on a Second Circuit decision which held that where an assignment does not convey a concrete stake in the outcome of the litigation, the assignee/plaintiff (there, the State of Connecticut) does not "suffer an injury of a nature that would confer standing upon it under Article III of the Constitution." *Physicians Health,* 287 F.3d at 115. Invoking this approach, this Court observed:

> Plaintiffs' situation is precisely the same as that of the State of Connecticut. The assignments on which plaintiffs rely for standing do not shift the loss suffered by the PSPs to the aggregators that represent them.... And while the Second Circuit recognized that there are some situations where the assignment of a claim may confer standing on an assignee who has not incurred an injury, expense or loss in exchange for the assignment, the Court made clear that such a " 'claim' cannot simply refer to a right to bring suit." Since plaintiffs' assignments in this case grant only the right to sue and not a right to a remedy, plaintiffs have failed to establish standing.

*APCC I,* 254 F.Supp.2d at 139 (citations omitted). The Court now believes that it

erred in viewing these two situations as indistinguishable.

In *Physicians Health,* the State of Connecticut brought suit under ERISA against an insurance company that offered managed care plans to Connecticut residents. The State asserted standing to sue as the assignee of participants in the managed care plans who had been injured by the plans' actions and who had assigned their right to seek injunctive or other equitable relief to the State. However, the plan participants had assigned to the State only "their right to seek 'appropriate equitable relief' with respect to any 'cause of action' they may have as plan participants or beneficiaries." 287 F.3d at 112. As such, the assignments did not reflect an intent to transfer title or ownership of the assignors' claims, but instead merely conferred a power of attorney with respect to that claim, that is, "the right to control the equitable portion of a lawsuit seeking redress of the assignor-participants' rights under ERISA." *Id.* at 118. Because only the right to sue was assigned and the State had no personal interest in the outcome of the suit, the Second Circuit concluded that the assignment did not convey a concrete stake in the litigation, and therefore that the State lacked standing to sue. *Id.* at 118–19.

For purposes of the standing inquiry, however, the Second Circuit contrasted such an assignment with a different type that would generate a different result: "even though an assignee incurs no injury, expense, or loss in exchange for the assignment, *a valid and binding assignment*

---

**10.** Defendant's reliance on *Compton v. Atwell,* 207 F.2d 139 (D.C.Cir.1953), is equally unconvincing given that the Court there held that the plaintiff, an assignee for collection only, could bring suit for the benefit of other creditors of the defendant. The assignee's standing was not challenged—only his status as a real party in interest. In any event, the Court concluded that it did not need to determine whether the assignee was the real party in interest because plaintiff was authorized to bring suit pursuant to an exception to the real party in interest requirement enumerated in Rule 17(a). *Id.* at 141.

*of a claim* (or a portion thereof)—not only the right or ability to bring suit—may confer standing on the assignee." *Id.* at 117 (emphasis added). Thus, in *Vermont Agency,* the Supreme Court held a relator in a *qui tam* action brought under the False Claims Act had constitutional standing notwithstanding the fact that such a party suffers no direct injury from the defendant's alleged wrongdoing. The Court based its conclusion on the "doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." 529 U.S. at 774, 120 S.Ct. 1858. While this doctrine may not always apply (as *Physicians Health* makes clear), it does in the present case.

That is so because the assignments at issue, which provide that each PSP "assigns, transfers and sets over . . . for purposes of collection, all rights, title and interest of the Company in the Company's claims, demands or causes of action for Dial–Around Compensation due the Company," clearly manifest the PSPs' intention to transfer legal title of the claims to plaintiffs. As a result, plaintiffs here actually *own* the claims at issue (a power the State of Connecticut lacked), and therefore are entitled to bring this suit in their own name. *See* 287 F.3d at 118–19 (emphasizing the fact that the assignments merely gave the State "the right to act as a nominal party"). Moreover, as described above, this transfer of ownership also transfers the legal injury that is the basis for the Article III standing.[11] In this sense, it is significant that the assignments in *Physicians Health* did not provide for a remedy on which the State itself could collect, but were solely for injunctive relief, which could have benefitted only the punitive assignors and not the nominal plain-

tiff. Such an assignment left the underlying injury with the plan beneficiaries, and meant that a favorable judicial ruling would not have alleviated any harm suffered by the State, or redounded to its direct benefit. Accordingly, the State did not "stand[ ] in the assignor's stead with respect to both injury and remedy," and thus was without standing to sue. *Id.* at 117.

Here, in contrast, the assignments allow plaintiffs to seek a remedy (money damages) that, if awarded, would run to plaintiffs directly and satisfy their claims—even though they are ultimately obligated to remit any damages awarded to the PSPs. Accordingly, by virtue of the assignments, plaintiffs have come to stand in the place of the PSPs with respect to both injury and remedy. Unlike the State of Connecticut, they are the legal owners of the claims they assert and have the exclusive right to collect on those claims; they thus have a concrete stake in the outcome of the litigation sufficient to satisfy the injury-in-fact requirements of Article III. And, a decision ordering defendant to compensate plaintiffs would redress this injury. Under the framework set forth in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), plaintiffs therefore have standing to bring this suit.

## III. Assignability of Claims under Applicable Law

In their initial motion to dismiss, defendant argued that even if plaintiffs have standing, the claims made by plaintiff APCC Services on behalf of its assignors must be dismissed because those claims are not assignable under Virginia law. As the Court has determined that plaintiffs

---

**11.** Or, to put the same concept in different terms, the assignment may be said to confer on the assignee a kind of "representational

standing." *Vermont Agency,* 529 U.S. at 774, 120 S.Ct. 1858.

have standing to sue, it must now address this issue.

■ Defendant argues that the claims asserted by plaintiffs are not assignable under Virginia law, which limits the types of claims that may be assigned to "causes of action for damage to real or personal property." VA. CODE ANN. § 8.01–26 (West 2003). It is, however, irrelevant whether this state statute would actually bar the assignment of the claims asserted. Defendant's argument fails because plaintiffs' claims are based on violations of federal law, and it is well settled that "[w]here a claim for relief is created by federal statute, federal law governs the assignability of the claim." *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Lit.*, 636 F.Supp. 1138, 1152 (C.D.Cal.1986) (assignability of RICO treble claim is one of federal law); *see also Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 85 F.3d 970, 973 (2d Cir.1996) ("The federal courts have consistently determined that federal law governs the assignability of claims under the federal securities laws."); *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir.1993) (Greenberg, J., concurring) ("the validity of the assignment of an antitrust claim is a matter of federal common law").

### CONCLUSION

For the reasons discussed above, the Court concludes that plaintiffs have standing to bring this suit based on the assignments from the PSPs and that these assignments are legally permissible. The Court therefore grants plaintiffs' motion for reconsideration, and vacates its March 28, 2003 Memorandum Opinion and Order. Given these rulings, the remaining motions to amend have been rendered moot. A separate Order accompanies this Memorandum Opinion.

### *ORDER*

This matter is before the Court on plaintiffs' motions for reconsideration and for leave to amend its complaint and plaintiff Peoples Telephone Company's motion for leave to amend. Based on the pleadings, the record, and relevant case law, it is hereby

**ORDERED** that plaintiffs Motion for Reconsideration [71–1] is **GRANTED**; it is

**FURTHER ORDERED** that the Court's March 28, 2003 Memorandum Opinion in *APCC Servs. v. AT & T*, 254 F.Supp.2d 135 (D.D.C.2003), and corresponding Order [70–1, 70–2] are **VACATED**; it is

**FURTHER ORDERED** that AT & T's Motion to Dismiss Assignee Plaintiffs' Claims [58–1] is **DENIED**; it is

**FURTHER ORDERED** that the Aggregators' Motion for Leave to Amend [72–1] is **DENIED AS MOOT**; it is

**FURTHER ORDERED** that Peoples Telephone Company's Motion for Leave to Amend [73–1] is **DENIED AS MOOT**; and it is

**FURTHER ORDERED** that Defendant AT & T's Motion to Seal [78–1] is **GRANTED**.

**SO ORDERED.**